THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM E. HOPE, Defendant-Appellant.

Second District    No. 80-134

Opinion filed May 12, 1981.

Mary Robinson and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson and Barbara A. Preiner, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

Defendant, William E. Hope, was charged by indictment with deviate sexual assault, attempt deviate sexual assault and intimidation. The offenses were alleged to have been committed upon a fellow inmate of the Du Page County jail. After a bench trial, the defendant was found guilty. On the deviate sexual assault charge, he was sentenced to the Department of Corrections for seven years.

At the trial, the complaining witness, Matthew Ehrenberg, gave the following testimony. On September 16, 1978, while he was an inmate of the Du Page County jail, the defendant, also an inmate of the jail, approached Ehrenberg's bunk bed. The defendant then made a number of statements to Ehrenberg. The defendant stated that he wanted to rape Ehrenberg and have oral sex with him, that Ehrenberg was bisexual and that people often must do things in life which they do not wish to do. According to Ehrenberg, the defendant also offered to stay with Ehrenberg to insure that Ehrenberg received all his meals and to prevent other inmates from bothering him. Ehrenberg replied that he was not bisexual, and he refused to have any relations with defendant. Defendant then stated that some of the other inmates might hurt Ehrenberg if the latter refused to cooperate. Ehrenberg testified that when this conversation occurred, the other inmates were watching television.

Ehrenberg further testified that defendant awoke him the following morning. The defendant then walked to the day room, while Ehrenberg walked toward the shower. Shortly thereafter, the defendant joined Ehrenberg and guided him into the stall. At the defendant's request, Ehrenberg removed his own uniform. Ehrenberg, who was 5 feet 9 inches tall and weighed 130 pounds, stated that out of fear he made no attempt

to resist the defendant. Ehrenberg described certain sexual acts which defendant had compelled Ehrenberg to perform. At that time, a guard approached and ordered whoever was in the shower stall to come out. The defendant told Ehrenberg to remain quiet, but Ehrenberg then walked out of the stall and told the guard that someone was trying to rape him. The guard ordered the other person in the stall to come out. When the defendant emerged, he was fastening his uniform.

Ehrenberg admitted that he had made no effort to awaken the other inmates while these events were in progress. He also acknowledged having been schooled for learning disabilities and having been under psychiatric care for most of his life. Ehrenberg stated that at the time of these events, he was being held on a charge of public indecency, to which he subsequently pleaded guilty. He also acknowledged having previously been convicted of disorderly conduct for having falsely reported to police that he had been the victim of an armed robbery.

Deputy George Wick, Jr., of the Du Page County sheriff's office, testified that on September 16, 1978, during his morning rounds of the county jail, he observed the shower curtain moving in a shower stall. He ordered whoever was there to come out. Ehrenberg emerged "in a bent-over position coming to an upright position." Ehrenberg had his overalls in one arm and was stepping into them as he came out of the stall. Wick testified that Ehrenberg, who appeared "a little upset," reported that someone in the stall was trying to rape him. When no one else emerged from the stall, Wick ordered Ehrenberg to pull back the shower curtain. This maneuver revealed the defendant, clad in his underwear and sitting in a crouched position. Defendant stood up and walked quickly to the day room. When Wick asked the defendant what he was doing in there, the defendant pointed to Ehrenberg and said, "Why don't you ask him?"

Approximately 45 minutes later, the defendant told Wick that Ehrenberg had been attempting to hang himself in the shower stall, and that defendant had prevented him. Wick then re-examined the shower stall and found a 12-inch strip of torn pillow case hanging from the water temperature handle. The cloth was approximately 1 inch wide. Wick had not seen this strip of cloth in the shower previously.

The State also called another inmate of the jail, Scott Archibald. Archibald testified that on the morning of September 16, 1978, he observed Matthew Ehrenberg talking to a guard. At that time, Ehrenberg was trembling, pale, crying and "real scared".

The defendant testified that when he arrived at the jail at approximately 11 a.m. on September 15, 1978, he was assigned to the tier where this incident occurred. The defendant stated that he went to sleep that evening without speaking to Ehrenberg. The next morning he was awakened by a trustee and was reading in the day room when he

observed Ehrenberg tearing up a terry cloth towel. Ehrenberg fastened the pieces of toweling together, went into the shower, and closed the curtain after him. After a minute, defendant became curious and looked in the stall. He observed Ehrenberg sitting on the floor. One end of the toweling was tied to the water temperature handle; the other was tied around Ehrenberg's neck. Ehrenberg told defendant that he was tired of doing favors for the other inmates. The defendant then told Ehrenberg that he was going about things the wrong way and he should speak to one of the guards. Defendant had begun taking the toweling off Ehrenberg's neck when Deputy Wick arrived and asked who was in the shower. Ehrenberg stepped out, but defendant stayed in the stall "contemplating whether I should come out right behind him or what." When he heard Ehrenberg complain of an attempt rape, the defendant came out of the shower laughing. The defendant stated that he was laughing because he knew about Ehrenberg's mental situation. The defendant was 6 feet 2 inches tall and weighed approximately 210 pounds.

George Cuteo, also an inmate of the jail, testified that on the evening of September 15, 1978, when Ehrenberg claimed to have had his initial conversation with the defendant, the defendant had been watching television with other inmates. Cuteo stated that on the morning of September 15, he saw the defendant at breakfast, and during lunch on that day he observed the defendant lying on his bunk.

The trial court subsequently found the defendant guilty as charged and entered the sentence. This appeal followed.

On appeal, the defendant contends that his attorney at trial, Ms. Therese Rapchak of the Du Page County public defender's office, also represented the State's witness, Scott Archibald, when Archibald appeared before the grand jury which inquired into this incident. The grand jury minutes indicate that Archibald testified, but he was not a suspect in the investigation. Nonetheless, the defendant contends that this situation constituted a *per se* conflict of interest which denied the defendant effective assistance of counsel and thus violated his rights under the sixth and fourteenth amendments to the United States Constitution and article 1, section 8 of the Illinois Constitution.

While the defendant's attorney raised this same objection in the defendant's post-trial motion, prior to and during the trial, neither she nor the defendant made objections to her continued representation of the defendant. The record does disclose that just prior to the commencement of the trial in this case, the trial court stated that a possible conflict of interest may have arisen. Prior to this statement on the record, the fact that Ms. Rapchak had advised Archibald had apparently been discussed off the record. On the morning of the trial, the trial court stated on the record:

"[THE COURT:] And I hope the record is sufficiently clear that Miss Rapchak did not represent a State's witness on any matter concerning this case.

MS. RAPCHAK: * * * I did advise him when he went before the Grand Jury in this case.

THE COURT: To tell the truth.

MS. RAPCHAK: Yeah.

THE COURT: Okay."

■■ Courts have long recognized that the attorney representing the concerned parties is in the best possible professional and ethical position to determine when a conflict of interest exists (*Holloway v. Arkansas* (1978), 435 U.S. 475, 485, 55 L. Ed. 2d 426, 435, 98 S. Ct. 1173, 1179), and they have an obligation to advise the court of the extent of any possible conflict (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 346, 64 L. Ed. 2d 333, 345, 100 S. Ct. 1708, 1717).

When the court inquired into the possibility of a conflict of interest, defense counsel had an opportunity to add any additional details which would be relevant in determining whether a conflict of interest existed; she confined herself to only one detail—that she told the witness, Archibald, to tell the truth. At that time, defense counsel did not even suggest to the court that she felt the conflict was sufficient to prevent her from adequately representing the defendant. She did not request leave to withdraw as counsel, nor did she voice any objection on behalf of the defendant. Furthermore, the defendant, who was present during this discussion, failed to voice any objection to Ms. Rapchak's continued representation of his interests.

■■ In order to establish a violation of a defendant's right to effective assistance of counsel, "a defendant who raises no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 348, 64 L. Ed. 2d 333, 346-47, 100 S. Ct. 1708, 1718.) Thus, the threshold question is whether this court finds an actual conflict of interest manifested by the trial court record (*People v. Canales* (1980), 86 Ill. App. 3d 738, 742; see *People v. Vriner* (1978), 74 Ill. 2d 329, 340), for it is clear that a judgment will not be disturbed on the basis of a hypothetical conflict (*People v. Berland* (1978), 74 Ill. 2d 286; *People v. Gray* (1980), 87 Ill. App. 3d 142, 151).

■■ Generally stated, an actual conflict of interest exists when counsel, without the knowledge and consent of the defendant, "is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others." *People v. Stoval* (1968), 40 Ill.

2d 109, 112; see *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.

The defendant asks this court to assume that when Ms. Rapchak advised Archibald to tell the truth to the grand jury, Archibald related to Ms. Rapchak incidents which were inconsistent with his in-court testimony, and, thus, the attorney-client privilege fettered Ms. Rapchak in her cross-examination of Archibald.

We note that the only communication between Ms. Rapchak and Archibald which can be found in the record was her admonition to Archibald to tell the truth to the grand jury. Furthermore, when the post-trial motion was denied, the trial court noted that there was no indication of any confidential statement which would create a conflict of interest. When the trial court made this comment, both Ms. Rapchak and the defendant were present. Neither one of them objected to or corrected the trial judge's statement.

As was noted in *People v. Vriner* (1978), 74 Ill. 2d 329, 342, "a positive basis must be found for concluding that an actual conflict of interest existed"; the fact that a defendant "through hindsight, conceived notions that the representation adversely affected" his interest is insufficient. This defendant's assertion that there may have been inconsistent confidential statements made by Archibald to Rapchak is mere speculation and is not supported by the record. In fact, the record strongly indicates that no such statements were made. The record is devoid of any actual conflict. There being no proof of an actual conflict, this court is not required to speculate as to how Ms. Rapchak's advice to Archibald may have affected her subsequent representation of the defendant. *People v. Berland* (1978), 74 Ill. 2d 286, 301; *People v. Gray* (1980), 87 Ill. App. 3d 142, 152.

Moreover, Archibald's testimony at trial was essentially limited to a description of Ehrenberg's appearance and demeanor after the incident in the shower stall. No antagonism existed between the defendant's testimony and Archibald's testimony. The victim's condition, as described by Archibald, could have been either the result of an aborted suicide attempt as claimed by the defendant, or the result of an alleged sexual assault as charged by the State. Archibald's statements did not warrant impeachment by the defense.

■■ Because the record has revealed no actual conflict, it is unnecessary to apply the *per se* rule. (*People v. Berland* (1978), 74 Ill. 2d 286, 304.) Furthermore, an examination of the record in this case shows that Ms. Rapchak ably represented the defendant. The defendant's claim that he lacked effective assistance of counsel is without merit.

The defendant also contends that the prosecution violated the provisions of Rule 412 and the principles of due process embodied in *Brady*

*v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and *People v. Nichols* (1976), 63 Ill. 2d 443, by failing to introduce into evidence the 12-inch strip of cloth recovered from the shower stall or by failing to explain its absence. The defendant, therefore, argues that the State improperly suppressed this evidence.

■■ Having raised these issues for the first time on appeal, defendant has waived them. *People v. Jackson* (1981), 84 Ill. 2d 350; *People v. Tannenbaum* (1980), 82 Ill. 2d 177.

Moreover, we find no merit, whatsoever, in these contentions. Prior to trial, the court entered a standard discovery order directing the prosecution to comply with Supreme Court Rule 412 (Ill. Rev. Stat. 1979, ch. 110A, par. 412). In its answer to the discovery order, the prosecution stated that it intended to introduce at trial "an approximately 12″ length of sheet-like material" and advised defense counsel that this sheeting could be inspected. Thus, the State properly complied with the requirements of Rule 412. Because Rule 412 speaks only in terms of discovery, and not in terms of production of evidence, the State's failure to introduce the evidence or explain its absence does not violate Rule 412.

■■ Both *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97, and *People v. Nichols* (1976), 63 Ill. 2d 443, 446, hold that a violation of due process occurs when a prosecutor, regardless of motive, suppresses material evidence after a request for production. It has been established, however, that no improper suppression of evidence has occurred where, prior to trial, defense counsel is made aware of the existence of the evidence and makes no effort to have it produced. (*People v. Smith* (1970), 46 Ill. 2d 430; *People v. Hudson* (1968), 38 Ill. 2d 616.) In this matter, defense counsel did not seek an order of court for the production of the sheeting, nor did she request the State to produce it at trial. While defendant's counsel, during her closing argument, stated: "As to the whereabouts of the towel, * .* * we have not been able to locate it. * * * We can't account for what happened to it, and that's why the evidence is not here today," this remark, made after proofs were closed and the parties had rested, cannot be construed as a request for the production of the evidence, or as a complaint that the State had not made the evidence available. Absent any request whatsoever to produce the sheeting, the defendant cannot seriously contend that the State violated his due process rights by suppressing evidence material to his defense.

■■ Finally, the defendant contends that because Ehrenberg's testimony should not have been believed, the evidence was insufficient to establish the defendant's guilt beyond a reasonable doubt. Specifically, he focuses upon Ehrenberg's record of psychiatric disorders. There was, however, no indication that Ehrenberg's ability to perceive and relate events was impaired. Therefore, the fact that Ehrenberg had been schooled for a

learning disability and had received psychiatric care for most of his life did not necessarily discredit his testimony. Similarly, while Ehrenberg's conviction for disorderly conduct for falsifying a police complaint requires that his testimony be carefully scrutinized, it does not necessarily render it unworthy of belief. Finally, defendant notes inconsistencies in Ehrenberg's testimony. These inconsistencies relate to whether the defendant was wearing his jail uniform while inside the shower stall. Ehrenberg's testimony as to the actual events in question, however, was not materially impeached. Rather, it tended to be supported by the testimony of Deputy Wick.

In a bench trial, the judge, who is best able to observe the demeanor of the witnesses, must determine whether to believe the testimony wholly, partially or not at all. In this case the trial judge specifically stated that she did not believe the defendant's testimony, and unless the judge's determinations are shown to have been manifestly erroneous, they will not be disturbed on review. (*People v. Deming* (1980), 87 Ill. App. 3d 953.) Accordingly, we determine that there was sufficient evidence to establish defendant's guilt beyond a reasonable doubt.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.