ELIZABETH JENNER, Plaintiff-Appellee, v. BRUCE WISSORE, Defendant-Appellant.

Fifth District    No. 5—86—0344

Opinion filed January 5, 1988.

260

Edward F. Brennan, Jr., of Brennan & Associates, of Belleville, for appellant.

Ellan A. Dauber, of Cook, Shevlin & Keefe, Ltd., of Belleville, for appellee.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

Defendant, Bruce Wissore, appeals from a judgment of the circuit court of St. Clair County finding him in indirect civil contempt for failure to obey a prior order entered by the court. Two questions are presented for our review: (1) whether plaintiff had standing to bring the suit which culminated in the order Wissore is alleged to have violated, and (2) if so, whether the contempt judgment is contrary to the manifest weight of the evidence. For the reasons which follow, we hold that plaintiff did not have the requisite standing and that the circuit court therefore lacked subject matter jurisdiction to hear and decide this case. Accordingly, the contempt judgment is void and must be vacated.

The events giving rise to this appeal occurred on the eve of an election held on November 5, 1985, at which voters in the Belleville Area College (BAC) taxing district were asked to pass on the question of whether taxes to support the college should be increased. The tax increase proposition was put to the voters based on a unanimous decision made by the BAC board of trustees in the summer of 1985. Plaintiff, Elizabeth Jenner, was and is a member of that board. Defendant, Bruce Wissore, was the college's chancellor and, as such, served as the chief administrative officer of the school.

Earlier in the year, a group of volunteers had formed an association to support the tax increase. That association, known as the Committee for Quality Education and Economic Development (the Committee), was duly registered with the Illinois State Board of Elections. Reports filed by the Committee with the State election board showed that the Committee collected more than $13,000 in individual contributions and secured $35,000 in bank loans during the months preceding the election. Although the Committee was not officially affiliated with BAC, its activities were endorsed and controlled by various administrators associated with the college, including Wissore. In addition, Wissore, the Committee and BAC were all represented by the same attorney.

The BAC board of trustees was never presented with nor did it

pass on any formal resolutions regarding the Committee. It did, however, share the Committee's goal of securing passage of the tax increase proposition. Before deciding to place the proposition on the ballot, the board hired Public Response, a corporation in the business of providing "communicative services," to advise it on the feasibility of presenting the proposition to the public and on the methods to be followed in campaigning for its passage. Thereafter, the board discussed and approved the use of college funds for the dissemination to the public of factual information relating to the proposition, although it did not approve of using such funds for "persuasive" purposes.

The distinction drawn by the board between "factual" and "persuasive" matters was based on section 3 of the Election Interference Prohibition Act (Ill. Rev. Stat. 1985, ch. 46, par. 103), which provides:

"No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated for political or campaign purposes to any candidate or political organization. This provision shall not prohibit the use of public funds for dissemination of factual information relative to any proposition appearing on an election ballot ***."

An opinion from counsel was obtained by Wissore on behalf of BAC in July of 1985 regarding allocation of various expenditures which had already been made in connection with the proposition in light of the foregoing statute. That opinion advised as to which of the expenses could be paid by BAC and which should be borne by the Committee. With respect to future expenses, the opinion admonished that "when in doubt resolution of the issue must be made in favor of payment from the committee and not the college." Thereafter, Wissore appointed two BAC administrators to oversee the proper division of liability for the costs and expenses of the tax increase campaign between BAC and the Committee. Consistent with the opinion from counsel, these administrators were advised by Wissore that any charges about which there might be a question should be paid by the Committee.

By statute, the BAC board of trustees had the power to grant temporary use of college buildings, classrooms and assembly halls to outside groups for civic, social, educational, literary and other purposes when those facilities were not occupied or otherwise needed by the college. (Ill. Rev. Stat. 1985, ch. 122, par. 103—43.) The board delegated authority for allowing and scheduling such use to the college administration. Pursuant to this authority, the administration allowed the Committee to hold a meeting in the college's theater and to use a vacant room for a telephone bank.

BAC had previously made its facilities available to a variety of political and community groups. According to Wissore, "We made [the facilities] available to every, every person that would ask. I can't remember turning people down." Although BAC administrative policy specified that requests to use the facilities should be made in writing, this was not a hard and fast rule. Requests were handled orally "on a fairly regular basis." Such was the case with the requests made by the Committee.

BAC apparently did not normally charge a fee to outside groups which had been given permission to use its facilities, and they did not charge the Committee for the meeting held in the theater. They did, however, sometimes require groups to pay rent for use of the facilities if such use entailed extra cleaning or moving of equipment by college personnel or other added expense to the school. A schedule of charges was established for this purpose. When BAC gave permission to the Committee to use the vacant room for a phone bank, it imposed a rent of $20. This was nearly twice what would normally have been charged. Double rent was required so that the school would avoid the appearance of favoritism toward the Committee. This rent was paid by the Committee, although the suggestion was made that the Committee may not have been charged for the full period during which it used the room.

The Committee hired Public Response to run its phone bank, which began operation on either September 19, 1985, or October 7, 1985. While BAC apparently made arrangements to have the phones installed and received the bills from the phone company, the Committee reimbursed the college for the installation and all use charges. The Committee also reimbursed the college for use of its postage meters.

Before the phone bank started, the college employed two market research assistants. These assistants ended up working mostly for the Committee. They were paid $6 an hour and were given space to use in another person's office at the college. The Committee was not charged for this office space, but did reimburse the college for the wages paid to the assistants.

The record further shows that literature prepared and distributed by the Committee for the tax increase campaign was printed by the college on campus. After the printing was completed, the school would bill the Committee for that portion of the material which was not factual in nature, but tended to persuade. The determination as to what was factual and what was persuasive was made by the college in consultation with counsel. The costs of the persuasive literature were

billed to the Committee under the same system used for billing other outside groups who used the campus printing facilities, and the Committee was charged at the college's standard rates.

None of these arrangements between BAC and the Committee for allocation of campaign expenses were reduced to writing, and while the Committee ultimately made payments to the college as set forth above, certain of the Committee's obligations remained outstanding as the election approached. To plaintiff, it appeared at this point that the property and funds of the college were being used unlawfully to support the tax increase. She therefore filed suit against Wissore to enjoin such use.

On October 29, 1985, plaintiff's complaint was dismissed. The same day, she refiled her complaint, and it was presented to a different judge. In her complaint, plaintiff alleged, *inter alia*, that Wissore "has directed and is directing that school funds and school resources be used to support the tax increase in violation of the Illinois Election Code, Ill. Rev. Stat., Ch. 46, Sec. 103 (1983)" and that

> "defendant Wissore has directed and allowed the Committee and Public Response, Inc. to campaign for the tax increase on school property, to conduct phone solicitation on a telephone bank at B.A.C., and to use the postage meter of B.A.C. for mass mailings in support of the tax increase, contrary to Ill. Rev. Stat. Ch. 122, Sec. 103—43, which provides that only the Board can authorize the use of school property, contrary to Board Policy ***, and contrary to Ill. Rev. Stat., Ch. 46, Sec. 103."

Plaintiff asserted that unless Wissore were restrained from engaging in these activities, she would suffer irreparable harm "in that school funds and property [would] continue to be improperly used in support of the tax increase." Accordingly, she prayed for issuance of a temporary restraining order and preliminary and permanent injunctive relief to stop Wissore's allegedly unlawful use of "public funds and property" and to require him to order the Committee and Public Response to cease "using B.A.C. phones, postage meters and other school property to campaign for the tax increase."

A hearing on plaintiff's request for a temporary restraining order and a preliminary injunction was scheduled for October 30. At that time, Wissore consented to entry of an order which provided:

> "Defendant is Ordered not to use Public Funds or Public Facilities to urge voters to support the tax increase for the Belleville Area College as is prohibited by the Election Code, Ch.46, §103.

Defendant, while not agreeing that public funds have been used to support the tax increase, does agree not to make available to the Committee for Quality Education and Economic Development or any other group supporting the tax referendum, college funds, property, personnel or facilities and further agrees that all such uses, if ongoing, shall be immediately terminated."

Five days later, plaintiff filed a petition for a "rule to show cause" why Wissore should not be held in contempt for violating the October 30 order. The basis for this petition was that (1) the phone bank at BAC had not been shut down "immediately," but rather was allowed to continue in operation until the end of the day on October 30, and (2) a meeting previously scheduled by the Committee and Public Response in connection with the tax increase campaign, at which Wissore was in attendance, was held at the BAC theater on the afternoon of October 30, after entry of the order.

Plaintiff's petition was granted, and the court ordered Wissore to appear on November 5 to show cause why he should not be held in contempt. On that date, Wissore filed a "special and limited appearance contesting jurisdiction" and a motion to dismiss. The trial court found that it did have jurisdiction to proceed and denied the motion to dismiss. It then conducted an evidentiary hearing at which Wissore alone testified. After the hearing, the court appointed an attorney named Becker to serve as a special master to review the expenditures made by BAC and the Committee on the tax increase campaign.

That the office of master in chancery has been abolished (*Factor v. Factor* (1975), 27 Ill. App. 3d 594, 597, 327 N.E.2d 396, 399) apparently did not trouble the court or the litigants. Nor were any questions raised when BAC was ultimately ordered to pay Becker $14,691.30 in fees and expenses, even though the college was not a party to the suit. Becker conducted his investigation without objection and prepared a report, which he filed on April 16, 1986.

On April 21, 1986, the court entered its judgment finding Wissore to be in contempt. By its terms the judgment characterized the contempt as civil in nature, but it ordered Wissore to pay a $500 fine to the county. This fine seems to have been purely punitive in nature, its purpose being to punish Wissore for conduct which, in the court's words, tended "to impede, embarrass, and obstruct the Court in its administration of justice and tended to bring the administration of justice into disrepute." The judgment also ordered Wissore to pay $955 to the college, "representing the reasonable value of College facilities and service not heretofore repaid by [Wissore] or the *** Com-

mittee." This appeal followed.

■ As a general rule, a court order is conclusive and must be obeyed until it is modified or set aside. (*In re Marriage of Houston* (1986), 150 Ill. App. 3d 608, 615, 501 N.E.2d 1015, 1020.) Contempt is a proper means for a court to enforce its orders. (*People v. Huntley* (1986), 144 Ill. App. 3d 64, 67, 493 N.E.2d 1193, 1196.) Nevertheless, a judgment of contempt cannot be sustained on review if the order which is claimed to have been violated is void. (*In re R.R.* (1982), 92 Ill. 2d 423, 430, 442 N.E.2d 252, 255.) Such a situation rises where the court lacked personal or subject matter jurisdiction or was otherwise without power to decide the particular matter presented to it. *People v. Huntley* (1986), 144 Ill. App. 3d 64, 68, 493 N.E.2d 1193, 1196; *In re A.M.* (1984), 128 Ill. App. 3d 100, 102-03, 470 N.E.2d 58, 60.

In this case, Wissore first argues that the circuit court lacked subject matter jurisdiction to enter the order of October 30 upon which the contempt judgment was predicated because plaintiff had no standing to sue. We agree.

Unlike Federal courts, which possess only the power authorized by article III of the Federal Constitution (U.S. Const., art. III) and the statutes enacted by Congress pursuant thereto (*Bender v. Williamsport Area School District* (1986), 475 U.S. 534, 541, 89 L. Ed. 2d 501, 511, 106 S. Ct. 1326, 1331), the courts of Illinois are courts of general jurisdiction. As our present constitution states:

"Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office. Circuit Courts shall have power to review administrative action as provided by law." Ill. Const. 1970, art. VI, §9.

■ Based upon this provision, plaintiffs suggest that the trial court must have had subject matter jurisdiction over this case because it was the type of dispute which the court was authorized to decide. Such a view, however, misperceives the nature of subject matter jurisdiction. The decisional law of this State has recognized that before a court may properly exercise jurisdiction over the subject matter of a dispute, it must possess not only the power to determine the class of cases into which the dispute falls, but also the power to grant the particular relief requested in the case before it. *People ex rel. Department of Human Rights v. Arlington Park Race Track* (1984), 122 Ill. App. 3d 517, 521, 461 N.E.2d 505, 508.

■■ ■ The power of a court to grant the relief requested in a

given case, and hence its subject matter jurisdiction, is limited by the doctrine of standing. Under this doctrine, a person seeking to invoke the jurisdiction of the court must have some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. (*Unger v. Nunda Township Rural Fire Protection District* (1985), 135 Ill. App. 3d 758, 763, 482 N.E.2d 123, 126.) In the context of a complaint for injunctive relief, the doctrine "makes it necessary for a party seeking such relief to allege an injury in fact to some substantive interest he possesses which is recognized by statute or common law." (*Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.* (1986), 143 Ill. App. 3d 285, 292, 492 N.E.2d 969, 974.) That a party may suffer in some abstract way will not suffice. There must be a direct injury to his property or rights. (143 Ill. App. 3d at 292, 492 N.E.2d at 974.) The purpose of this doctrine is to insure that the courts will be available to resolve actual, specific controversies between parties and will not be "overwhelmed in the mire" of abstract questions, moot issues, or cases brought on behalf of others who may not desire judicial aid. *Tarkowski v. Scott* (1979), 79 Ill. App. 3d 787, 789-90, 398 N.E.2d 891, 893; *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.* (1986), 143 Ill. App. 3d 285, 292, 492 N.E.2d 969, 974.

■■ Plaintiff observes that Wissore did consent to entry of the order he is alleged to have violated, but this is of no consequence. Defects in subject matter jurisdiction cannot be waived. (*People ex rel. Department of Human Rights v. Arlington Park Race Track* (1984), 122 Ill. App. 3d 517, 521, 461 N.E.2d 505, 508.) Under Illinois law, if a court does not have jurisdiction over the subject matter of a dispute, then the parties cannot confer such jurisdiction by acquiescence (122 Ill. App. 3d at 521, 461 N.E.2d at 508) or consent (*Paulik v. Village of Caseyville* (1981), 100 Ill. App. 3d 573, 576, 427 N.E.2d 213, 215). Because the doctrine of standing is addressed to a court's exercise of its subject matter jurisdiction, we believe that it must be governed by these same principles. To the extent that the Second District's recent opinion in *In re Custody of McCarthy* (1987), 157 Ill. App. 3d 377, 510 N.E.2d 555, can be construed to hold otherwise, we decline to follow it. The question of plaintiff's standing is therefore properly before us for review.

As our previous discussion has indicated, plaintiff's complaint was based primarily on Wissore's alleged violation of section 3 of the Election Interference Prohibition Act (Ill. Rev. Stat. 1985, ch. 46, par. 103), and the order which resulted from the complaint appears, by its terms, to have been predicated exclusively on that statute. Because

the statute concerns the use of public funds, defendant has argued that plaintiff was required to comply with the requirements of section 11–303 of our Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 11–303) before the circuit court could exercise its subject matter jurisdiction over the case.

Section 11–303 (Ill. Rev. Stat. 1985, ch. 110, par. 11–303) specifies procedures which must be followed in order for a taxpayer to have standing to bring suit to enjoin public officials from disbursing public funds. (See *Quinn v. Donnewald* (1985), 107 Ill. 2d 179, 185, 483 N.E.2d 216, 219.) Those procedures were clearly not followed in this case. Plaintiff contends that the absence of such compliance was not fatal to the court's jurisdiction. In the alternative, she asserts that the statute was not even applicable because her complaint does not challenge the "disbursement" of public funds at all, but rather the "misuse" of public funds and facilities.

█ We need not address the merits of these contentions, because we believe that section 11–303 (Ill. Rev. Stat. 1985, ch. 110, par. 11–303) is inapplicable for another reason. That statute expressly applies only to actions to restrain and enjoin the disbursement of public funds by "any officer or officers of the State government." (Ill. Rev. Stat. 1985, ch. 110, par. 11–301.) Our review of the record and the applicable statutes (see Ill. Rev. Stat. 1985, ch. 122, par. 103–1 *et seq.*) has persuaded us that BAC cannot be considered to be part of the "State," and that Wissore was not a State officer. *Cf. Gocheff v. State Community College* (1979), 69 Ill. App. 3d 178, 386 N.E.2d 1141.

While plaintiff was therefore not bound to comply with the requirements of section 11–303 (Ill. Rev. Stat. 1985, ch. 110, par. 11–303), she was nevertheless obligated to plead and prove that she otherwise had standing to bring her suit. This she did not do.

█ As we have noted, a direct injury in fact to a legally recognized interest is necessary to confer standing on a plaintiff. Where, as here, a suit seeks to enjoin the violation of a statute, the doctrine of standing specifically requires

> "that the plaintiff be one of the class designed to be protected by the statute, or for whose benefit the statute was enacted, and to whom a duty of compliance is owed. [Citations.] The object of the statute, the nature of the duty imposed by it, and the benefits resulting from its performance dictate what persons are entitled to sue thereunder." *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.* (1986), 143 Ill. App. 3d 285, 293, 492 N.E.2d 969, 975, quoting *Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 748, 359 N.E.2d 1137, 1140.

■ Both plaintiff and defendant agree that the prohibitions of section 3 of the Election Interference Prohibition Act (Ill. Rev. Stat. 1985, ch. 46, par. 103) are directed only toward expenditures of public funds. The term "public funds" has been interpreted narrowly to mean money or negotiable instruments readily convertible into cash, or, at most, property which is contemplated as something to be used for the payment of debts. (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 503, 217 N.E.2d 73, 78, *appeal dismissed, cert. denied* (1967), 385 U.S. 456, 17 L. Ed. 2d 509, 87 S. Ct. 612, *overruled in part on other grounds Paepcke v. Public Building Comm'n* (1970), 46 Ill. 2d 330, 263 N.E.2d 11.) Accordingly, there is no serious dispute that the statute does not give plaintiff an interest in how the college facilities or equipment involved in this case were used. Yet it was the alleged misuse of those facilities and that equipment which forms the foundation of plaintiff's cause of action and served as the basis on which defendant was found in contempt, not any actual expenditures of college funds.

With respect to such funds, the record fails to show that any monies were ultimately paid out by the college in violation of section 3 of the Election Interference Prohibition Act (Act) (Ill. Rev. Stat. 1985, ch. 46, par. 103). While the college may have incurred expenses because of the Committee during the tax increase campaign, the only such expenses for which the college may not ultimately have been reimbursed related to the use of such things as office and meeting space at the school and other services provided by the college. That this is so was recognized by the trial judge himself in his contempt order, for although the court did direct Wissore to repay $955 to the college, the order makes clear that that sum was not to restore any college funds which had been depleted, but merely to reimburse the college for the reasonable value of its "facilities and service." Under these circumstances, we fail to see how plaintiff can claim that she sustained any direct injury in fact to any legally recognized interest under the Election Interference Prohibition Act.

Even if, *arguendo*, any of the expenses incurred by the college could be construed as violating the Act's restraints on the use of public funds, we would nevertheless conclude that plaintiff lacks standing to sue to enjoin those violations. In our view, section 3 of the Act (Ill. Rev. Stat. 1985, ch. 46, par. 103) appears to have several, interrelated objectives. First, it helps to ensure that public funds will be devoted to the public purposes for which they were levied and not to the personal political interests of public officeholders. Taxes should, after all, support the operation of government; they ought not to be treated as

campaign contributions to government officials. Similarly, the statute serves to eliminate the advantage which incumbent officeholders might have in affecting the electoral process if they were permitted to use the public monies at their disposal in support of their own political agendas. At the same time, it recognizes the contributions which can be made by public officials, who experience the day-to-day problems of carrying out the responsibilities of their offices and who must live with the decisions made by the electorate, in educating voters regarding the issues on which those voters will be asked to cast their ballots at the polls.

The statute implements these objectives by imposing on public officials the duty not to use public funds to try to sway voters on how they should vote, while enabling those officials to disseminate facts which will help the voters make more informed decisions. The benefits resulting from the performance of this duty enure to taxpayers, who have contributed the public funds; to the electorate in the taxing district involved; and to candidates and proponents of issues who have no access to the public fisc.

On this appeal, plaintiff asserts that she has standing under the statute by virtue of her status as a "citizen and taxpayer." Yet, there is no evidence which affirmatively shows that she does, in fact, pay taxes to BAC. Indeed, she does not even allege that she is a taxpayer in her complaint.

■ ■ Plaintiff's reliance on her status as a taxpayer must also fail for another reason. Under Illinois law, the rule remains that a taxpayer action will not ordinary lie absent a demand and refusal to sue by the governmental officials charged with the duty to act unless it is shown that such a demand would be useless. This is so even where the taxpayer would otherwise have standing. (*People ex rel. Lee v. Kenroy, Inc.* (1977), 54 Ill. App. 3d 688, 691-92, 370 N.E.2d 78, 80-81.) Before plaintiff brought suit to enjoin Wissore's alleged misuse of BAC facilities here, we, therefore, believe that she should first have made a demand upon the BAC board to take the necessary corrective action against Wissore, its employee. No such demand was in fact made by her, nor has she pleaded or proved that a proper demand would have been unavailing. To the contrary, the record suggests that the BAC board was, at all times, extremely concerned about making sure that the law was obeyed.

Plaintiff has not pleaded or proved that she is a voter, and she does not seek to assert any rights as a member of the electorate. In her complaint, plaintiff actually alleges only that she is suing "in her capacity as a member of the Board [of BAC]." In fact, however, plain-

tiff has never suggested that her position as board member entitles her to bring suit under the Election Interference Prohibition Act. She invokes this status only as a basis for her additional claim, discussed below, that Wissore's conduct contravened section 3—43 of the Public Community College Act (Ill. Rev. Stat. 1985, ch. 122, par. 103—43).

While Wissore's alleged violation of section 3 of the Election Interference Prohibition Act was the principal basis for plaintiff's suit, our previous discussion of the facts has shown that her complaint further alleged that Wissore's actions contravened BAC board policy. The complaint does not, however, refer to any particular provision of that policy that may be relevant to this dispute. It merely cites generally to the BAC policy handbook. That handbook has not been included in the record, and there is no indication that it played any role in the proceedings before the trial court. In any event, plaintiff no longer argues that she has an independent claim based on that policy. On appeal, she refers to the policy only tangentially in connection with the third and final claim for relief alleged in her complaint, namely, that Wissore's conduct was also contrary to section 3—43 of the Public Community College Act (Ill. Rev. Stat. 1985, ch. 122, par. 103—43).

That statute invests the BAC board with the power

> "to grant temporary use of the community college buildings, when not occupied by the college, for religious meetings and Sunday schools, for evening schools and literary societies, and for such other meetings as the board deems proper; to grant the use of assembly halls and classrooms when not otherwise needed, including light, heat and attendants, for public lectures, concerts, and other educational and social interests, under such provisions and control as they may see fit to impose and to conduct, or provide for the conducting of recreational, social and civic activities in the college buildings."

Plaintiff asserts that the use of BAC facilities by the Committee during the tax increase campaign was allowed and directed by Wissore, but that Wissore did not follow the procedures established by the Board for permitting such use. For this reason, plaintiff argues that Wissore deprived her of her right as a board member under the foregoing statute "to help determine whether and when college property and facilities would be made available to persons and groups 'as the board deems proper.' "

■ Putting aside the paucity of evidence regarding such a claim, we must once again conclude that plaintiff had no standing to raise it. The powers defined by section 3—43 of the Public Community College

Act (Ill. Rev. Stat. 1985, ch. 122, par. 103—43)'belong to the BAC board, not to the individual members thereof. Under Illinois law, community college boards are collective bodies. They may sue and be sued as a body politic (Ill. Rev. Stat. 1985, ch. 122, par. 103—11), and they make their decisions by majority vote of a quorum of their full voting membership (Ill. Rev. Stat. 1985, ch. 122, par. 103—9). If the board, acting as a body, determined that Wissore was not obeying its procedures, then it was for the board to take action against him.

To be sure, plaintiff did have the right as an elected board member to participate in any vote on measures' brought before the board for a decision. In this case, however, the record is clear that the board was never presented with, nor did it pass on any, formal resolutions concerning either the use of college facilities by the Committee or Wissore's conduct. Plaintiff does not contend that there was any impropriety in this regard, or that the board failed to properly carry out its legal responsibilities. But even if she had made such a claim, her remedy would have been to sue the board, not Wissore.

In short, we fail to see how plaintiff has any separate interest as an individual sufficient to allow her to bring suit against Wissore under section 3—43 of the Public Community College Act (Ill. Rev. Stat. 1985, ch. 122, par. 103—43), and her status as a board member cannot, standing alone, permit her to unilaterally "step into the shoes of the Board" and file suit to vindicate its collective rights. (See *Bender v. Williamsport Area School District* (1986), 475 U.S. 534, 89 L. Ed. 2d 501, 106 S. Ct. 2003.) To hold otherwise under the circumstances present here would permit minority board members to usurp the legitimate collective power of the board whenever they might disagree with its conduct or the conduct of its employees.

Because plaintiff has thus failed to plead and prove that she had standing to sue to restrain the alleged violations of either of the statutory provisions she has invoked, the circuit court had no jurisdiction to hear and decide this case. Its order of October 30 was therefore void, and its judgment finding Wissore in contempt for violating that order must be vacated. In light of this disposition, we need not reach Wissore's additional claim that the judgment was contrary to the manifest weight of the evidence.

Judgment vacated.

LEWIS and CALVO, JJ., concur.