BRUCE R. WISSORE, Plaintiff-Appellant, v. THOMAS W. ALVEY, JR., *et al.*, Defendants-Appellees.

Fifth District   No. 5—89—0554

Opinion filed September 17, 1990.—Rehearing denied November 9, 1990.

RARICK, J., dissenting.

Daniel R. Devereaux and Edward F. Brennan, both of St. Louis, Missouri, for appellant.

James B. Wham and Jennifer W. Price, both of Wham & Wham Attorneys, of Centralia, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Bruce R. Wissore, appeals the dismissal with prejudice of his second amended complaint alleging legal malpractice against defendants, Thomas W. Alvey, Jr., Edward Bott, and Thompson and Mitchell, attorneys at law. The second amended complaint was dismissed with prejudice by order of the circuit court of St. Clair County dated March 9, 1989. In this cause, plaintiff raises the sole issue whether the trial court erred in dismissing plaintiff's second amended complaint with prejudice for failure to state a cause of action. We reverse and remand.

The events giving rise to this appeal occurred in a separate lawsuit in which Bruce R. Wissore, plaintiff herein, was named as the defendant. We, therefore, borrow liberally from the facts set out in *Jenner v. Wissore* (1988), 164 Ill. App. 3d 259, 517 N.E.2d 1220, and supplement with additional facts relevant only herein.

On October 29, 1985, Elizabeth Jenner, a member of the Board of Trustees of Belleville Area College (BAC), filed suit against plaintiff as chancellor of BAC to enjoin allegedly unlawful use of college property and funds to support a tax increase proposition for BAC scheduled to appear on the November 1985 election ballot. A group of volunteers who supported the tax increase formed an association known as the Committee for Quality Education and Economic Development (the committee). Although the committee was not officially affiliated with BAC, its activities were endorsed and controlled by various administrators associated with BAC, including plaintiff. The BAC Board of Trustees (the board) shared the committee's goal of securing passage of the tax increase proposition. To help effectuate passage, the BAC board hired an organization by the name of Public Response to assist the board in directing a campaign for passage of the tax increase. Thereafter, the board discussed and approved the use of college funds to disseminate to the public factual information relating to the proposition, although the board did not approve of using such funds for "persuasive" purposes.

By statute, the board had the power to grant temporary use of college buildings, classrooms, and assembly halls to outside civic, so-

cial, educational, and literary groups when such facilities were not being used by the college. (Ill. Rev. Stat. 1985, ch. 122, par. 103–43.) The board delegated its authority to the college administration. Pursuant to this authority, the administration allowed the committee to hold a meeting in the college's theater and to use a vacant room for a telephone bank. The committee was charged a rental fee of $20 for the vacant room, which was nearly twice the normal charge. Double rent was charged to avoid the appearance of favoritism or impropriety.

The committee hired Public Response to run the phone bank. The committee either paid for or was reimbursed for all charges. Two market research assistants were employed by the college, but performed virtually all of their work for the committee. The committee did pay the workers a $6-per-hour wage, but did not pay for office space at the college used by the workers. Additionally, literature prepared and distributed by the committee was printed at the college. The committee would reimburse the college for that portion of the material which was persuasive, but not for those portions which were factual in nature. The determination between what was factual and what was persuasive was made by the college in consultation with counsel.

In her petition, Jenner alleged, among other things, that plaintiff "has directed and is directing that school funds and school resources be used to support the tax increase in violation of the Illinois Election Code (Ill. Rev. Stat. 1983, ch. 46, sec. 103)." Jenner prayed for issuance of a temporary restraining order and for preliminary and permanent injunctive relief to halt plaintiff's allegedly unlawful use of "public funds and property" and to require him to order the committee and Public Response to stop using BAC property to aid in the campaign for the tax increase. A hearing on Jenner's request for a temporary restraining order and a preliminary injunction was scheduled on October 30, 1985. At that time, plaintiff was represented by attorneys Thomas W. Alvey, Jr., and Edward Bott, from the law firm of Thompson and Mitchell, defendants herein. Plaintiff consented to the entry of an order which provided:

> "Defendant is Ordered not to use Public Funds or Public Facilities to urge voters to support the tax increase for the Belleville Area College as is prohibited by the Election Code, Ch. 46, §103.
>
> Defendant, while not agreeing that public funds have been used to support the tax increase, does agree not to make

available to the Committee for Quality Education and Economic Development or any other group supporting the tax referendum, college funds, property, personnel or facilities and further agrees that all such uses, if ongoing, shall be immediately terminated."

Five days later, Jenner filed a petition for a "rule to show cause" why plaintiff should not be held in contempt for violating the October 30 order. The basis for this petition was that (1) the phone bank at BAC had not been shut down "immediately," but rather was allowed to continue in operation until the end of the day on October 30, and (2) a meeting, at which plaintiff was in attendance, previously scheduled by the committee in connection with the tax increase campaign, was held at the BAC theater on the afternoon of October 30, after entry of the order.

Jenner's petition was granted, and the court ordered plaintiff to appear on November 5 to show cause why he should not be held in contempt. On that date, plaintiff filed a "special and limited appearance contesting jurisdiction" and a motion to dismiss. The trial court found that it did have jurisdiction to proceed and denied the motion to dismiss. It then conducted an evidentiary hearing at which plaintiff alone testified. After the hearing, the court appointed attorney Robert Becker to serve as special master to review the expenditures made by BAC and the committee on the tax increase campaign.

Becker conducted his investigation without objection and prepared a report, which he filed on April 16, 1986. In his findings, Becker reported:

"[A]s to the use of the phone banks for nine to nine-and-one-half hours after the Court Order, it appears that Dr. Wissore told Public Response to cease their use and Public Response was then contacted by Alvey who informed it that the phones were to be non-operational by the end of the day."

Becker further reported that plaintiff did not contact defendant Alvey about the propriety of the meeting held on October 30, 1985, between the committee and Public Response. Becker also investigated the borrowing of money by the committee to support the tax referendum. With respect to this, Becker reported:

"After a meeting with Wissore, on July 17, 1985, Vice-Chancellor Hines arranged a loan with Dennis E. Bielke, President of General Bank, on behalf of the Committee for Economic Development and Quality Education for $25,000.00. Wissore, Hines, Eskridge, Clark and Tallant agreed to co-sign said De-

mand Note. Bielke noted that repayment would come from their individual payroll contributions to the Committee totaling $930.78 a month over the next 32 months. Mr. Bielke noted: 'These contributions reflect pay raises for additional responsibilities that the individuals have taken on at the college.' *** Hines denies saying this, but indicated that Bielke must have misunderstood him. Hines said he was referring to all payroll contributions being made by teachers out of their salaries or from extra jobs held.

Tallant, Eskridge and Clark all say they co-signed but were told by Hines that contributions to the Committee for Economic Development and Quality Education would be sufficient so that they would never have to pay back the loan. Wissore and Hines say they knew that there was a strong possibility that the money would have to be repaid.

The $25,000.00 Demand Note originally dated July 17, 1985 was executed on August 17, 1985. On September 19, 1985, a new note was drawn for $33,392.16 representing the need by the Committee for Economic Development and Quality Education for an additional $10,000.00 as decided by Wissore.

On February 7, 1986, the Committee for Economic Development and Quality Education repaid the second Demand Note in full. Said Note had a balance due of $29,845.82. The Committee for Economic Development and Quality Education was able to do so after receiving a check from Wissore in the amount of $27,870.00 which was deposited in the Committee for Economic Development and Quality Education's account on February 7, 1986. *** Dr. Wissore had also contributed another $5,000.00 to the Committee for Economic Development and Quality Education on January 30, 1986. He states his purpose for these contributions was for the benefit of the college and for his career so that this matter could be put behind him. For the last two months, the Committee for Economic Development and Quality Education showed a balance in the account of $10.18."

On April 21, 1986, after receiving and approving Becker's report, the circuit court of St. Clair County entered final judgment finding plaintiff to be in contempt and ordered him to pay a $500 fine to the county for conduct which, in the court's words, tended "to impede, embarrass, and obstruct the Court in its administration of justice and tended to bring the administration of justice into disrepute." The judgment also ordered plaintiff to pay $955 to the col-

lege, "representing the reasonable value of College facilities and service not heretofore repaid by [Wissore] or the *** Committee."

Wissore appealed the contempt order to this court. In *Jenner v. Wissore* (1988), 164 Ill. App. 3d 259, 517 N.E.2d 1220, we vacated the contempt finding on the basis that the plaintiff, Jenner, had no standing to sue, either as a board member or as an individual, and, therefore, the circuit court lacked subject matter jurisdiction.

On October 8, 1987, plaintiff filed a three-count complaint against his attorneys, defendants Alvey, Bott, and Thompson and Mitchell, claiming malpractice in the representation of plaintiff in the *Jenner* case. On June 1, 1988, this complaint was dismissed on motion of defendants. Plaintiff filed an amended complaint which was also dismissed. Plaintiff then filed his second amended complaint on January 5, 1989, in which he alleged that defendants herein breached their duty of loyalty to plaintiff in that they:

"(a) Undertook to defend plaintiff when they had a direct and irreconcilable conflict of interest in that Elizabeth Jenner, who undertook the action against which plaintiff was forced to defend, was an employer of Thomas Alvey in matters directly related to those complained of by Elizabeth Jenner;

(b) Undertook to defend plaintiff when defendant, Thomas Alvey, was in fact, the party responsible for the conduct which was an alleged violation of the consent order;

(c) Undertook to defend plaintiff and continued such representation while retaining his position as an employee of the Board of Trustees of which Elizabeth Jenner was a member; and conducted and was paid by Belleville Area College for at least seven (7) conferences with Elizabeth Jenner during the period covered by the court actions of Elizabeth Jenner;

(d) Undertook to defend plaintiff while retaining his position as an employee of the Board of Trustees of which Elizabeth Jenner was a member when he knew, had reasons to know, or should have known that the interests of plaintiff and those of defendant's employer, Belleville Area College, were in irreconcilable conflict;

(e) Advised plaintiff to enter into a consent order without fully and adequately explaining its content and import;

(f) Advised plaintiff that the consent order did not go into effect until the day after its entry when in fact, it stated that it was effective immediately;

(g) Advised the manager of the phone bank that opera-

tions of the phone bank could continue throughout the day of October 30, 1985, the day on which the consent order was entered;

(h) Failed to advise the court that had there been a violation of the consent order with respect to activities which occurred on the day the order was entered, that such violation was directed and authorized by the defendant and was defendant's responsibility, not that of plaintiff;

(i) Failed to advise plaintiff, the court, or Belleville Area College in a timely fashion that on November 5, 1985, the day of the contempt hearing, he was fully aware of the fact that he owed conflicting duties to Elizabeth Jenner and plaintiff, and to Belleville Area College and plaintiff; and that defendant's duties to both Elizabeth Jenner and Belleville Area College were, in the opinion of the defendant, more important than defendant's duties to plaintiff;

(j) Balanced the separate interests of plaintiff and the committee for economic Development and Quality Education by advising that plaintiff's legal liabilities would be diminished if plaintiff would personally repay the loan of the Committee for Economic Development and Quality Education."

Plaintiff further alleged that as a direct and proximate result of one or more of the foregoing negligent acts, he sustained damages in the form of the contempt of court citation, the repaying of the loan of the committee, and further irreparable damage to his reputation and standing in the community. Plaintiff claimed he sustained actual damages in the amount of $32,870. The trial court entered an order dismissing the second amended complaint with prejudice, finding that as a matter of law, plaintiff failed to state a cause of action. Plaintiff appeals, arguing that his second amended complaint stated a valid cause of action for legal malpractice upon which relief could be granted.

■■ It is generally recognized that a section 2—615 motion to dismiss (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) attacks only the sufficiency of the complaint and should be decided only upon the allegations set forth therein. (*Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 359 N.E.2d 171.) The motion should be granted only if it is clear that the plaintiff can prove no set of facts under the pleading which would entitle him to relief. (*Alper Services, Inc. v. Wilson* (1980), 85 Ill. App. 3d 908, 407 N.E.2d 677.) In considering the question whether plaintiff's complaint did or did not state a cause of action, we must be aware of

plaintiff's theory as to why defendant is guilty of malpractice. The essence of plaintiff's theory is that defendants owed a duty of undivided loyalty to him which defendants breached by providing legal advice and counsel to Elizabeth Jenner on at least seven occasions during the period of defendants' representation of plaintiff, for which defendants were compensated by the Board of Trustees at BAC. This advice was given at the sole request of Jenner without preapproval of the board and was for the sole and personal use of Jenner in her litigation against plaintiff. Plaintiff further alleges that a conflict existed because of defendants' representation of the Committee for Economic Development and Quality Education, a committee formed to aid in the passage of the tax referendum.

■■ ■ In order to state a cause of action for legal malpractice, a plaintiff must allege facts demonstrating: (a) the existence of an attorney/client relationship; (b) a duty arising from that relationship; (c) a breach of that duty on the part of defendant/counsel; (d) proximate cause; and (e) damages. (*B.T. Explorations, Inc. v. Stanley* (1989), 187 Ill. App. 3d 23, 25, 542 N.E.2d 1292, 1294.) In the instant case, there is no question but that plaintiff sufficiently satisfied the first and second elements for stating a malpractice claim by alleging an attorney/client relationship between the parties and a duty of undivided loyalty owed by defendants to plaintiff. As to the third element, plaintiff alleged defendants breached their duty by committing the following acts or omissions:

"(a) Undertook to defend plaintiff when they had a direct and irreconcilable conflict of interest in that Elizabeth Jenner, who undertook the action against which plaintiff was forced to defend, was an employer of Thomas Alvey in matters directly related to those complained of by Elizabeth Jenner;

(b) Undertook to defend plaintiff when defendant, Thomas Alvey, was in fact, the party responsible for the conduct which was an alleged violation of the consent order;

(c) Undertook to defend plaintiff and continued such representation while retaining his position as an employee of the Board of Trustees of which Elizabeth Jenner was a member; and conducted and was paid by Belleville Area College for at least seven (7) conferences with Elizabeth Jenner during the period covered by the court actions of Elizabeth Jenner;

(d) Undertook to defend plaintiff while retaining his position as an employee of the Board of Trustees of which Elizabeth Jenner was a member when he knew, had reasons to

know, or should have known that the interests of plaintiff and those of defendant's employer, Belleville Area College, were in irreconcilable conflict;

(e) Advised plaintiff to enter into a consent order without fully and adequately explaining its content and import;

(f) Advised plaintiff that the consent order did not go into effect until the day after its entry when in fact, it stated that it was effective immediately;

(g) Advised the manager of the phone bank that operations of the phone bank could continue throughout the day of October 30, 1985, the day on which the consent order was entered;

(h) Failed to advise the court that had there been a violation of the consent order with respect to activities which occurred on the day the order was entered, that such violation was directed and authorized by the defendant and was defendant's responsibility, not that of plaintiff;

(i) Failed to advise plaintiff, the court, or Belleville Area College in a timely fashion that on November 5, 1985, the day of the contempt hearing, he was fully aware of the fact that he owed conflicting duties to Elizabeth Jenner and plaintiff, and to Belleville Area College and plaintiff; and that defendant's duties to both Elizabeth Jenner and Belleville Area College were, in the opinion of the defendant, more important than defendant's duties to plaintiff;

(j) Balanced the separate interests of plaintiff and the committee for economic Development and Quality Education by advising that plaintiff's legal liabilities would be diminished if plaintiff would personally repay the loan of the Committee for Economic Development and Quality Education."

In considering a motion to dismiss, the trial court must accept as true all facts well pleaded as well as reasonable inferences which can be drawn from those facts. (*Schnidt v. Henehan* (1986), 140 Ill. App. 3d 798, 803, 489 N.E.2d 415, 418.) We believe that the allegations set forth above are sufficient to state a cause of action for legal malpractice in that they raise a question as to whether a conflict of interest existed by defendants' representation of plaintiff while at the same time advising Jenner and BAC.

■■ ■ The test established to determine whether a conflict of interest exists has been set forth in *People v. Hope* (1981), 96 Ill. App. 3d 180, 420 N.E.2d 1171, and is applicable here:

"Generally stated, an actual conflict of interest exists when

counsel, without the knowledge and consent of the defendant, 'is in a duplicitous position where his full talents—as a vigorous advocate having the single aim of acquittal by all means fair and honorable—are hobbled or fettered or restrained by commitments to others.' *People v. Stoval* (1968), 40 Ill. 2d 109, 112." (96 Ill. App. 3d at 184-85, 420 N.E.2d at 1174.)

*Hope* further states, quoting *People v. Vriner* (1978), 74 Ill. 2d 329, 342, 385 N.E.2d 671, 676:

" '[A] positive basis must be found for concluding that an actual conflict of interest existed'; the fact that a defendant 'through hindsight, conceived notions that the representation adversely affected' his interest is insufficient." (*Hope*, 96 Ill. App. 3d at 185, 420 N.E.2d at 1174.)

We find that plaintiff's complaint meets the *Hope* test for alleging a positive basis for concluding that a conflict existed. Defendants contend that because there is no allegation in the complaint that defendants undertook to represent Elizabeth Jenner individually, there can be no conflict of interest. We disagree. While Jenner was represented by her own attorney, we believe that if it can be proven that "advice and counsel" were given to Jenner by defendants in her suit against plaintiff, that such acts would be unreasonable and would constitute a conflict of interest. Such a conflict of interest would be a violation of defendants' duty of loyalty to plaintiff for which a malpractice action would be appropriate.

Plaintiff also sufficiently alleged proximate cause in his second amended complaint by stating that as a result of one or more of defendants' negligent acts (1) plaintiff was issued a contempt citation, (2) plaintiff was wrongly advised to pay off the loan for $32,870, and (3) plaintiff suffered irreparable damage to his reputation and standing in the community. We also find that plaintiff sufficiently alleged damages in the amount of $32,870 to overcome defendants' motion to dismiss. While we agree with defendants that damages may be difficult to prove in this case because plaintiff voluntarily undertook this obligation before the *Jenner* case began, the issue of damages is not before us at this time. We are obliged only to determine whether plaintiff's complaint alleges a causal connection between defendants' alleged negligent acts and damages to state a cause of action sufficient to overcome defendants' motion to dismiss. We believe that the multiple representation pleaded by plaintiff, coupled with advice to plaintiff to pay off a loan for which he was not the only guarantor, sufficiently states a cause of action.

Defendants contend that malpractice cannot exist unless

counsel's negligence has resulted in the loss of the underlying cause of action. (See *Claire Associates v. Pontikes* (1986), 151 Ill. App. 3d 260, 502 N.E.2d 1108; *Land v. Greenwood* (1985), 133 Ill. App. 3d 537, 478 N.E.2d 1203.) Therefore, since the contempt order was ultimately vacated by this court, defendants' representation of plaintiff resulted in no damage. We disagree. At least one of our sister courts has recognized that there may be instances in which the outcome of the underlying suit should not be determinative of the malpractice claim. In *Cook v. Gould* (1982), 109 Ill. App. 3d 311, 440 N.E.2d 448, a malpractice action against an attorney for failure to file suit within the statute of limitations, the plaintiff argued that the burden of proof should have been shifted to the defendant to show that the underlying cause of action was not meritorious. The plaintiff further urged the court to modify the rule that a plaintiff must prove that his underlying claim would have been successful but for the negligence of his attorney. The plaintiff urged the court to require the negligent attorney to show that the underlying action was not meritorious and would not have been successful even if the suit had been filed within the statute of limitations. While the *Cook* court declined to change the general law at that time, it noted, "we can conceive of situations where the attorney, because of equitable considerations, might be estopped to deny the validity of the underlying lawsuit." (109 Ill. App. 3d at 314, 440 N.E.2d at 450.) We find the instant facts present such a situation.

While we ultimately reversed the contempt citation issued by the trial court (see *Jenner v. Wissore* (1988), 164 Ill. App. 3d 259, 517 N.E.2d 1220), plaintiff has alleged facts sufficient to show that he was damaged by defendants' representation of him in that suit. Specifically, plaintiff claims he was ill-advisedly told to pay off the $32,870 bank note because of defendants' representation of BAC and advice given to Jenner. Plaintiff further claims damage to his reputation and standing in the community caused by some 70-odd news stories that were printed as a result of the contempt citation. Defendants reply that since plaintiff failed to attach these articles or to plead that such news stories were derogatory, there is no basis for liability. Defendants further contend that they have no duty to control the media. As previously stated, the trial court must accept as true all well-pleaded facts and reasonable inferences which can be drawn from those facts. (*Schnidt v. Henehan* (1986), 140 Ill. App. 3d at 803, 489 N.E.2d at 418.) We believe the reasonable inference is that these news stories were derogatory. If plaintiff can prove that defendants' representation of him constituted malprac-

tice, then plaintiff has likewise alleged sufficient damages. Under these circumstances equitable considerations determine that the malpractice suit should be allowed to proceed even though the contempt citation was ultimately reversed.

For the foregoing reasons, the order of the circuit court of St. Clair County is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LEWIS, P.J., concurs.

JUSTICE RARICK, dissenting:

Because I do not believe that Wissore has alleged sufficient facts which would constitute damages as a result of the defendants' conduct, I do not agree with the majority and respectfully dissent. As the majority points out, one of the elements of a legal malpractice claim is damages. In the present case Wissore alleged that he was damaged in one or more of the following ways: He was issued a contempt citation; he was wrongly advised to pay off the $32,870 loan; and he suffered irreparable damage to his reputation.

Addressing the contempt citation first, the defendants' argument that Wissore suffered no damage because the citation was vacated is correct in my view. In *Claire Associates v. Pontikes* (1986), 151 Ill. App. 3d 116, 502 N.E.2d 1186, the court stated that "no malpractice exists unless counsel's negligence has resulted in the loss of an underlying cause of action or the loss of a meritorious defense." (*Claire*, 151 Ill. App. 3d at 122, 502 N.E.2d at 1190.) Clearly, Wissore lost no cause of action. It is the loss of a "meritorious defense," specifically the failure to defend on the basis that Wissore did not perform the act which was the subject matter of the contempt hearing, which he alleges to be the cause of his damages. Yet as he was ultimately victorious on appeal, the loss of this defense, assuming that it was meritorious or was lost as a result of the defendants' negligence, could not have caused Wissore any harm. The majority relies on *Cook v. Gould* (1982), 109 Ill. App. 3d 311, 440 N.E.2d 448. In *Cook*, the plaintiff argued that in malpractice cases based on the defendant attorney's failure to file the cause of action within the applicable statute of limitations, the burden of proof should be shifted to the attorney to show that the underlying action was not meritorious and would not have been successful. As the majority points out, the court in *Cook* declined to change the

law, but stated in *dicta* that it could conceive of situations where the attorney, because of equitable considerations, might be estopped to deny the validity of the underlying lawsuit, and that such estoppel would shift the burden of proof to the defendant attorney and require him to present some evidence of the lack of merit of the underlying action. The majority then goes on to state, without explanation, that the facts in the present case present such a situation. I do not agree. First, I see no reason why the defendants should be estopped from denying the merit of the defenses allegedly abandoned, and so am not persuaded that the burden of proof should be shifted to them. Second, even if it were the defendants' burden to prove the lost defense was meritless, and, more importantly, even if the lost defense had merit, Wissore still has suffered no damage because he prevailed on appeal. *Cook* is simply inapplicable to the present situation. Because the contempt citation was vacated, Wissore could not have been damaged thereby.

Wissore's next contention of damage is the repayment of the loan. Again, I find no facts alleged which could establish that he was damaged by repayment of the loan. As a co-guarantor, he was legally obligated to pay the note and, because his liability was joint and several, he was liable for the entire amount. He is in no way precluded from seeking contribution from his co-guarantors. No action of the defendants either caused him to assume any obligation that he did not have nor abandon any right that he had. His legal position with respect to the note and his co-guarantors is unchanged and, again, there are no facts alleged which could establish that Wissore was damaged by repayment of the note.

Wissore's final allegation of damage is that his reputation and standing in the community were harmed as a result of the press coverage resulting from the contempt citation. He seems to be arguing that had the defendants raised the defense in question (that Wissore did not perform the acts which were the subject matter of the contempt hearing), the court would not have entered the contempt citation and so there would have been no press coverage. Once again, because the contempt citation was vacated on appeal, I find no facts alleged which, if proven, would demonstrate that Wissore was damaged. In any event, mere failure to prevent the contempt citation from being entered in the first instance cannot be grounds for legal malpractice (*Schnidt v. Henehan* (1986), 140 Ill. App. 3d 798, 489 N.E.2d 415, 420) unless it resulted from the defendant's failure to exercise the requisite degree of care and skill. Wissore's complaint alleges no facts which, if proven, would demon-

strate that but for the failure to raise the defense, the contempt citation would not have been entered. Wissore failed to allege facts which would demonstrate that the defendants' failure to raise the defense in question was anything more than a matter of trial tactics. The rule in Illinois is that "attorney[s are] not liable *** for errors in judgment, but only for failing to exercise a reasonable degree of care and skill, notwithstanding *** an unfavorable result." *Goldstein v. Lustig* (1987), 154 Ill. App. 3d 595, 600, 507 N.E.2d 164, 168-69.