**Jeffrey A. BROWN, M.D., Plaintiff,**

v.

**MEDICAL COLLEGE OF OHIO, et al., Defendant.**

**No. 3:99 CV 7763.**

United States District Court,
N.D. Ohio,
Western Division.

Dec. 28, 1999.

Charles A. DeMonaco, Dickie, McCamey & Chilcote, Pittsburgh, PA, Gerardo R. Rollison, Cooper, Walinski & Cramer, Toledo, OH, for Jeffrey A Brown, M.D., plaintiff.

John M. Carey, Watkins, Bates & Carey, Toledo, OH, Gary O. Sommer, Watkins, Bates & Carey, Toledo, OH, for Medical College of Ohio, defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Plaintiff's motion for a temporary restraining order (Doc. No. 2), and on Defendant's motion to dismiss (Doc. No. 5). For the following reasons, Defendant's motion to dismiss will be granted.

### BACKGROUND

Plaintiff Jeffrey Brown, M.D., brings this action to enforce certain provisions of the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 *et seq.*

Defendant Medical College of Ohio is a state-operated medical school located in Toledo, Ohio. Medical College of Ohio operates Defendants Medical College of Ohio Hospital, MCO/Mercy Rehabilitation Hospital, and Lenore W. and Marvin F. Kobacker Center. For convenience, the Court will refer to the presently named defendants collectively as MCO. Proposed additional Defendants Jagadish Jhunjhunwalla and Frank McCullough are, respectively, the chief of staff and CEO of MCO.

Prior to June 22, 1999, Plaintiff was the head of neurosurgery at MCO. Early in 1999 Plaintiff was accused of certain improprieties in connection with brain and spine surgeries that were to be performed by him. On June 22, 1999, Plaintiff took a six-month unpaid leave of absence from MCO, with the understanding that the leave of absence would automatically be converted into a resignation from both his faculty appointment at the Medical College of Ohio and his medical staff membership at MCO Hospitals, effective January 1, 2000. Brown requested, and received, the six-month leave of absence in order to search for a new job while he was, technically, still employed. On October 26, 1999, MCO instituted a formal investigation of Brown's alleged professional improprieties. That investigation remains pending.

At dispute in this case is whether Plaintiff's resignation, effective January 1, 2000, triggers a reporting requirement under the Health Care Quality Improvement Act of 1986 ("HCQIA"). One purpose of the HCQIA is to restrict the ability of incompetent physicians to move from state to state without disclosure of their previous incompetent performance. 42 U.S.C. § 11101(2). Among other things, the Act requires hospitals to report any professional review actions that adversely affect a physician's clinical provisions for longer than thirty days, the physician's name, the reason for the action, and other relevant information to the National Practitioner Data Bank ("NPDB").[1] 42 U.S.C. § 11133(a)(1)(A) & (3); 45 C.F.R. pt. 60. That information is then made available to other hospitals upon request if the physician applies for clinical privileges or appointment to a medical staff. 42 U.S.C. § 11137(a). In order to prevent physicians from circumventing the reporting requirement by resigning in anticipation of an adverse professional review action, the Act also requires any hospital that accepts the surrender of a physician's clinical privileges "while the physician is under an investigation ... relating to ... improper conduct," or in return for the hospital not conducting such an investigation, to report that surrender of privileges. 42 U.S.C. § 11133(a)(1)(B).

1. Specifically, the hospital must report (a) identifying information including the physician's name, home and work addresses, Social Security number, date of birth, medical school and date of graduation, all professional license numbers and other descriptive information, and Drug Enforcement Administration registration number; (b) the factual reasons underlying the loss or surrender of privileges; and (c) the action taken, the date the action was taken, and effective date of the action. 45 C.F.R. § 60.9.

The HCQIA contains certain due process protections for physicians who are accused of professional misconduct, which procedures must be followed before a report of an adverse professional review action is made. 42 U.S.C. § 11112(b). A physician who voluntarily surrenders privileges during an investigation of professional misconduct or in return for the hospital not conducting an investigation is deemed to have waived those protections.

MCO has taken the position that it must report Plaintiff's resignation to the NPDB on January 1, 2000 because under the Act it is a resignation "while the physician is under an investigation ... relating to ... improper conduct."

Plaintiff argues that his resignation does not trigger the reporting requirement. He points out that although the effective date of his resignation occurs while he is under investigation, his last affirmative act to effectuate the resignation occurred four months before the formal investigation began, and at a time when no formal investigation was threatened. Plaintiff argues further that the public policy underlying the reporting requirement is not implicated in this case, because he is not trying to avoid an investigation that could lead to an adverse professional review; it is not disputed that such an investigation is underway.

Plaintiff brought this action seeking an injunction prohibiting MCO from reporting his resignation to the NPDB until the completion of the professional review action process.

MCO has moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction on two separate grounds. First, it argues that it is immune from suit under the Eleventh Amendment, since it is an arm of the state of Ohio. Second, it argues that the HCQIA does not give physicians a private right of action to challenge an adverse report; Plaintiff's sole remedy is the administrative procedure outlined in 45 C.F.R. § 60.14.

The parties have briefed both the subject matter jurisdiction issue and the merits of Plaintiff's claim. Plaintiff has submitted, although not filed, a proposed amended complaint in which he replaces the MCO Defendants with Doctors Jhunjhunwalla and McCullough, and adds a claim under 42 U.S.C. § 1983. For the sake of efficiency, the Court will address the claims for relief asserted both in the original complaint and in Plaintiff's proposed amended complaint.

### DISCUSSION

### A. Motions to Dismiss Generally

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Westlake, supra*, at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed.1997).

### B. Eleventh Amendment Immunity

The first issue the Court must address pertaining to Plaintiff's original complaint is whether the Court has jurisdiction to hear a physician's claim under the HCQIA when that claim is brought against a state-owned hospital. This appears to be a question of first impression; the Court is unaware of any reported case in which a physician has attempted to bring a claim under the HCQIA against a state-owned hospital.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the text of the amendment expressly prohibits federal courts from hearing only state-law claims brought by citizens of other states, the Supreme Court has long held that the Eleventh Amendment bars all suits brought by individuals against unconsenting states. *Hans v. Louisiana,* 134 U.S. 1, 14–15, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

The parties do not dispute that the Medical College of Ohio is an arm of the state of Ohio, and thus enjoys Eleventh Amendment immunity. *Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299, 307 (6th Cir.1984). Since the College is an arm of the state of Ohio, its affiliated hospitals are also entitled to immunity from suit in federal court. *Thomson v. Harmony,* 65 F.3d 1314, 1319 (6th Cir.1995); *accord Watson v. University of Utah Med. Ctr.,* 75 F.3d 569, 577 (10th Cir.1996).

■■■ Despite this general immunity from suit, Congress may, however, abrogate the states' Eleventh Amendment immunity under certain limited circumstances. In order to determine whether Congress has abrogated the states' immunity, the Court asks two questions: "first, whether Congress has unequivocally expressed its intent to abrogate the immunity; and second, whether Congress has acted pursuant to a valid exercise of power." *Seminole Tribe v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996) (internal quotes and citations omitted). Nothing in the text of the HCQIA indicates a Congressional intent to abrogate the states' Eleventh Amendment immunity from suits by individuals. Since Congress did not express an intent to abrogate state sovereign immunity in the Act, the Court's inquiry ends.

Plaintiff concedes that the Medical College of Ohio and its affiliated hospitals are immune under the Eleventh Amendment from suit brought by a private person to enforce the provisions of the HCQIA. Therefore, this suit must be dismissed as to them.

## C. Private Right of Action for Physicians to Enforce HCQIA

■■■ Plaintiff seeks to amend his complaint to bring suit against Dr. Jagadish Jhunjhunwalla, MCO's Chief of Staff, and Dr. Frank McCullough, MCO's President and CEO, in their official capacities, seeking an injunction prohibiting them from reporting Plaintiff's resignation to the NPDB until the completion of the professional review action process. Under the *Ex parte Young* exception to Eleventh Amendment immunity, a federal court has jurisdiction to hear a claim for prospective injunctive relief brought against a state official, in his official capacity, to vindicate a federal right. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Since Dr. Jhunjhunwalla is the party responsible for making the report to the NPDB, and Dr. McCullough has the authority to act on MCO's behalf in reporting matters to the NPDB, Plaintiff may bring a claim for injunctive relief against them if such an action is otherwise available. Accordingly, the Court must address the issue of whether a physician may bring an action to enforce the peer review provisions of the HCQIA.

Neither the HCQIA nor its accompanying regulations provide a private right of action. The regulations do provide an administrative remedial procedure under which any physician "may dispute the accuracy of information in the Data Bank concerning himself or herself." 45 C.F.R. § 60.14(a). When a physician initiates such a dispute, a "dispute notation" is added to the report, and any hospital requesting information about a reported physician is informed that the report is in dispute. National Practitioner Data Bank, Fact Sheet on the Dispute Process (visited December 28, 1999), <*http://www.npdb–hipdb.org /pdf/0004fs03.pdf*>.

Although the Sixth Circuit has not had cause to address whether the HCQIA impliedly creates a private right of action

whereby an aggrieved physician may enforce its provisions, every federal court to have addressed the issue has held that no such cause of action is created. *Wayne v. Genesis Med. Ctr.*, 140 F.3d 1145, 1147–48 (8th Cir.1998); *Bok v. Mutual Assurance*, 119 F.3d 927, 928–29 (11th Cir.1997); *Hancock v. Blue Cross–Blue Shield*, 21 F.3d 373, 374–75 (10th Cir.1994).[2] This Court agrees with the reasoning and rule of those decisions.

■ In determining whether a private right of action may be implied from a statute that does not expressly provide for one, the Court asks: (1) whether the plaintiff is a member of the class for whose special benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, to create or deny such a remedy; (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy; and (4) whether the cause of action is one traditionally relegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law. *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

■ There is no evidence in either the text or the legislative history of the HCQIA that physicians are a class for whose especial benefit the Act was passed. To the contrary, the HCQIA's text and legislative history indicate that it was passed to benefit *patients* by improving the quality of health care and reducing the number of incompetent physicians, and, in addition, to benefit peer review committees by providing immunity from suit so long as they abide by its procedures. Since the HCQIA was not enacted to benefit physicians, it follows that no implied right of action exists for physicians under the HCQIA.

Furthermore, allowing a private right of action to enforce the peer review proce-dures outlined in the HCQIA under the circumstances at bar would be inconsistent with the legislative scheme as a whole. The regulations accompanying the HCQIA set out a comprehensive administrative scheme for challenging the accuracy of a report made to the NPDB. Allowing a physician to bypass the administrative procedure simply by choosing to sue the reporting entity could "induce frequent and deliberative flouting of administrative processes, thereby undermining the scheme of decisionmaking that Congress has created" under the HCQIA. *See McGee v. United States,* 402 U.S. 479, 484, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971).

Plaintiff has argued that this case is distinguishable from the many cases holding there to be no independent right of action for a physician under the HCQIA because the relief he seeks is prospective. He argues that because he seeks an order to prevent a report from occurring (and therefore does not yet have access to the administrative remedial process), rather than an order to correct an erroneous report, he should be able to bring his action.

Plaintiff's argument is not convincing. The fact that the relief Plaintiff seeks is strictly prospective in nature has no bearing on whether Plaintiff is a "member of the class for whose special benefit the statute was enacted," so as to create a cause of action. Nor does the prospective nature of the relief he seeks reduce the danger that allowing a physician to bring a direct suit against the reporting entity could "induce frequent and deliberative flouting of administrative processes."

Plaintiff has also argued that *Simpkins v. Shalala,* 999 F.Supp. 106 (D.D.C.1998), stands for the proposition that the HCQIA provides him a cause of action for prospective injunctive relief. The plaintiff in *Simpkins* sued the Department of Health and Human Services ("HHS") under the

---

**2.** *Accord Held v. Decatur Mem. Hosp.,* 16 F.Supp.2d 975 (C.D.Ill.1998); *Simpkins v. Shalala,* 999 F.Supp. 106 (D.D.C.1998); *Canady v. Providence Hosp.,* 903 F.Supp. 125 (D.D.C.1995); *Doe v. United States Dep't of Health & Human Servs.,* 871 F.Supp. 808 (E.D.Pa.1994); *Goldsmith v. Harding Hosp.,* 762 F.Supp. 187 (S.D.Ohio 1991); *Caine v. Hardy,* 715 F.Supp. 166 (S.D.Miss.1989).

Administrative Procedures Act ("APA"), 5 U.S.C. §§ 501 *et seq.*, seeking review of an administrative determination that his resignation from a hospital staff constituted a reportable event. The district court ruled that the determination was arbitrary and capricious, and ordered HHS to remove the report from the NPDB. Plaintiff argues that since he seeks injunctive relief rather than damages, the reasoning of *Simpkins* mandates allowing a cause of action in Plaintiff's case.

Plaintiff has misread *Simpkins*. First, the district court did not grant any relief under the HCQIA; the relief was granted under the APA. Second, and more importantly to the instant case, the relief that was afforded in *Simpkins* was granted only after Simpkins had first exhausted his administrative remedies under the Act. Third, the *Simpkins* court expressly ruled that Simpkins had no right of action under the HCQIA. Nothing in *Simpkins* in any way indicates either that physicians constitute a class for whose benefit the HCQIA was enacted, or that allowing a physician to bypass the Act's administrative remedies would not "induce frequent and deliberative flouting of administrative processes." This Court joins the other federal courts which have held that the HCQIA does not create a private right of action allowing a physician to challenge a report made to the NPDB.

### D. Right of Action Under 42 U.S.C. § 1983

Plaintiff also seeks to amend his complaint to add a claim under 42 U.S.C. § 1983, which permits a plaintiff to bring a civil action against any person who, under color of state law, deprives the plaintiff of any "rights privileges, or immunities secured by the Constitution and laws" of the United States. Thus, Plaintiff can prevail only if he can establish (1) state action, and (2) the deprivation of a federal right. *Soper v. Hoben*, 195 F.3d 845, 852, (6th Cir. 1999).

■■ A party's conduct is "fairly attributable to the State" for purposes of

§ 1983 if "the deprivation [is] caused by . . . a person for whom the State is responsible" and "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Although a hospital peer review does not ordinarily constitute state action for purposes of § 1983, *Ezpeleta v. Sisters of Mercy Health Corp.*, 800 F.2d 119, 122 (7th Cir.1986), the fact that MCO is a state agency creates state action in this case.

■ It is on the second prong of the test that Plaintiff's § 1983 claim fails. Every court to have addressed the issue has held that a wrongful report to the NPDB does not constitute a deprivation of a liberty or property interest that is protected by federal law. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994); *Draghi v. County of Cook*, 991 F.Supp. 1055 (N.D.Ill. 1998); *Doe v. United States Dep't of Health & Human Servs.*, 871 F.Supp. 808, 813–14 (E.D.Pa.1994). As discussed above, the HCQIA was not enacted for the benefit of physicians. Plaintiff cannot avoid the administrative exhaustion requirement by styling his complaint as a § 1983 claim.

### CONCLUSION

Plaintiff's sole remedy at this juncture is the administrative procedure that will be available to him once MCO makes its report to the NPDB. Unfortunately for Plaintiff, under the Act's administrative relief scheme he must await the filing of that report before seeking relief; he cannot bring suit in federal court until he has exhausted his administrative remedies.

For the foregoing reasons, Plaintiff's motion for a temporary restraining order is denied. Defendant's motion to dismiss is granted.

IT IS SO ORDERED.