Nos. 2--03--0895 & 2--03--0975 cons.                    

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

EVELYN DIAZ,     ) Appeal from the Circuit Court

) of Kane County.

Plaintiff-Appellee, )

) 

v. ) No. 03--CH--570

)

PROVENA HOSPITALS, d/b/a Provena Saint 
 )

Joseph Hospital;
 
THE LOCAL 
GOVERNING 
 )

BOARD OF PROVENA
 
HOSPITALS, 
d/b/a )

Provena
, 
and 
BARBARA
 
AMSLER,
 )

THOMAS
 M. JOHANNESEN, 
MARGARET
 
 
 )

MUETERTIES, PEGGY KIRBY, ROBERT )

GILLIAM, JERRY CAIN, LEO NELSON, )

MARGARET GAVIGAN, ROBERT   )

SCHWAB, JOHN SHALES, ALAN HEFNER; )

and WILLIAM BROWN, Indiv. and as )

Members of the Local Governing Board, ) Honorable

) Gene L. Nottolini,

Defendants-Appellants. ) Judge, Presiding.

______________________________________________________________________________

EVELYN DIAZ,     ) Appeal from the Circuit Court

) of Kane County.

Plaintiff-Appellee, )

) 

v. ) No. 03--CH--570

)

PROVENA HOSPITALS, d/b/a Provena Saint 
 )

Joseph Hospital,
 )

)

Defendant and Contemnor-Appellant )

)

(The Local Governing Board of Provena )

Hospitals, d/b/a Provena, and Barbara Amsler, )

Thomas M. Johannesen, Margaret Mueterties, )

Peggy Kirby, Robert Gilliam, Jerry Cain, Leo )

Nelson, Margaret Gavigan, Robert Schwab, )

John Shales, Alan Hefner, and William Brown, ) Honorable

Indiv. and as Members of the Local Governing ) Gene L. Nottolini,

Board, Defendants-Appellants). ) Judge, Presiding.

______________________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

 Defendant Provena Hospitals, d/b/a Provena Saint Joseph Hospital (Hospital), appeals from an order of the circuit court of Kane County finding it in indirect civil contempt for failing to retract a report it made to the National Practitioner Data Bank regarding plaintiff, Evelyn Diaz, M.D.  The court imposed upon the Hospital a monetary penalty of $500 per day for the first 14 days of noncompliance and $1,000 per day thereafter.  The Hospital argues on appeal that we should vacate the contempt order and the monetary penalty because (1) its report did not violate the language of an earlier temporary restraining order, (2) federal law required it to report Dr. Diaz's failure to renew her privileges, and  (3) Dr. Diaz has no private right of action to enjoin the Hospital from fulfilling its reporting obligation.   

We allowed the United States Department of Health and Human Services (HHS), as 
amicus curiae
, to file a brief in support of the Hospital.  HHS argues that the trial court's orders are preempted by federal law to the extent that they require the Hospital to void a report made in compliance with the Health Care Quality Improvement Act of 1986  (HCQIA) (42 U.S.C.A. §11101 
et seq.
 (West 1995))
.

I.     BACKGROUND

In order to facilitate our discussion of the facts of this case, we will first provide some background information about the HCQIA and the National Practitioner Data Bank (NPDB).  Congress enacted the HCQIA in order to improve the quality of medical care by encouraging physicians to participate in peer review and by restricting incompetent physicians' ability to move from state to state without disclosure or discovery of their previous incompetent performance.  42 U.S.C.A. §11101 (West 1995).  To address the latter issue, Congress created the NPDB, a national repository of information with the primary purpose of facilitating a comprehensive review of physicians' and other health care practitioners' professional credentials.  National Practitioner Data Bank Guidebook, at E-1 (September 2001).  Hospitals are required to report to the NPDB (1) professional review actions that are related to a physician's competence or conduct and that adversely affect clinical privileges for more than 30 days, and (2) a physician's voluntary surrender or restriction of clinical privileges while under, or to avoid, investigation.  42 U.S.C.A. §§11133(a)(1)(A), (a)(1)(B) (West 1995); National Practitioner Data Bank Guidebook, at  E-2, Table E-1 (September 2001).  Eligible entities may consult the NPDB to obtain information about a particular physician. National Practitioner Data Bank Guidebook, at  E-1 (September 2001).

Turning to the record before us, it reveals that, on April 28, 2003, Dr. Diaz filed a verified complaint in the circuit court of Will County against the Hospital and its board of governors (Board).  (Her cause of action was later transferred to Kane County.)  Dr.  Diaz alleged that, on November 5, 2002, the Hospital summarily suspended her medical staff membership and privileges.  The notice of the summary suspension, which is attached as an exhibit to the complaint, indicates that Dr. Diaz's summary suspension was based upon (1) a review of her charts, which showed at least five incidents demonstrating a substandard level of care; (2) her unavailability for over four hours while on emergency call; (3) her failure to see patients in a timely manner following their admission to the Hospital, and (4) her noncompliance with the medical staff bylaws regarding timeliness of medical record documentation.  On April 16, 2003, following a hearing, the Board decided to permanently revoke Dr.  Diaz's privileges.  Dr. Diaz alleged that the Hospital and the Board violated the Hospital Licensing Act (Act) (210 ILCS 85/1 
et seq.
 (West 2002)) and the Hospital's medical staff bylaws during the summary suspension and subsequent hearing processes.  Dr. Diaz asked the court (1) to declare the decision to summarily suspend and/or terminate her privileges to be in violation of the Act and the bylaws, (2) to enjoin the Hospital from terminating her privileges, and (3) to reinstate her to the medical staff.  Dr.  Diaz also filed a motion for a temporary restraining order (TRO), requesting the same relief she sought in her complaint.

The trial court granted Dr. Diaz's motion for a TRO, which restored Dr.  Diaz's privileges and enjoined the Hospital from "implementing" the termination of her privileges until the court could hold an evidentiary hearing.  Consequently, the Hospital did not report the termination of Dr.  Diaz's privileges to the NPDB.  However, in July 2003, after the court had entered the TRO, Dr. Diaz let her privileges with the Hospital lapse.  Then, on July 25, 2003, the Hospital reported Dr. Diaz to the NPDB for voluntarily surrendering her privileges while a peer review investigation was pending. 

  The Hospital's report to the NPDB stated as follows:

"Dr.  Evelyn Diaz, while in the midst of a corrective proceeding, allowed her medical staff membership and privileges to lapse on July 12, 2003, without applying for renewal.  On November 25, 2002, Dr.  Evelyn Diaz's privileges were summarily suspended for a variety of reasons relating to quality of care.  Following a hearing on November 20, 2002, the medical staff hearing panel lifted the suspension but imposed oversight requirements on Dr.  Diaz.  Consistent with the medical staff bylaws, the process with respect to her privileges continued until April 16, 2003, when the Board of Directors finally decided to terminate her privileges effective April 30, 2003.  Dr.  Diaz filed a lawsuit alleging that she had not been afforded due process consistent with the requirements of the medical staff bylaws.  On May 28, 2003, the court entered a temporary restraining order allowing Dr.  Diaz to maintain her medical staff membership and clinical privileges until the court could conduct an evidentiary hearing on the issue.  That hearing is now set to take place on September 24, 2003.  Dr.  Diaz did not admit any patients to Provena Saint Joseph Hospital between January 1, 2003 and July 12, 2003.  She claims that her decision not to seek renewal of her medical staff membership and privileges at Provena Saint Joseph Hospital was unrelated to the corrective action which had been initiated against her."

After the Hospital filed its report with the NPDB, Dr.  Diaz  filed a "Petition for Rule to Show Cause and for Award of Immediate Mandatory and Injunctive Relief," arguing that the Hospital had violated the TRO by filing its report with the NPDB.  Dr. Diaz asked the court to require the Hospital to submit to the NPDB a "void" report, which would retract the previously filed report.  On August 8, 2003, the court granted Dr. Diaz's motion, entered a rule to show cause against the Hospital, and ordered the Hospital to submit a void report to the NPDB that same day.

On August 11, 2003, the Hospital filed a petition for interlocutory appeal pursuant to Supreme Court Rule 307(d) (188 Ill. 2d R. 307(d).  We struck the petition after concluding that the order appealed from did not fall within the ambit of Rule 307(d).  We also denied the Hospital's motion to stay the trial court's order pending appeal.  However, we ordered the parties to submit briefs on the issue of whether we had jurisdiction pursuant to Supreme Court Rule 304(b)(5) (155 Ill. 2d R. 304(b)(5)).

On August 28, 2003, the trial court again ordered the Hospital to submit a void report to the NPDB.  The Hospital did not comply with the court's order.  On September 4, 2003, following a hearing, the court found the Hospital guilty of indirect civil contempt for refusing to comply with the August 28 order and ordered the Hospital to pay a monetary penalty of $500 per day for the first 14 days of noncompliance and $1,000 per day thereafter.  The court denied the Hospital's motion to stay the contempt order pending a posthearing motion or appeal.

The following day, September 5, 2003, the Hospital filed a notice of appeal and a motion to stay the contempt order.  We granted the motion and stayed any action by the trial court to enforce its findings of contempt predicated on the Hospital's refusal to file a void report.  We also granted  the Hospital's motion to consolidate its two appeals.

II.   ANALYSIS

A.    Jurisdiction

The trial court's September 4 order finding the Hospital in indirect civil contempt and imposing a monetary penalty is appealable pursuant to Supreme Court Rule 304(b)(5) (155 Ill. 2d R. 304(b)(5)).  Our review encompasses the orders of August 8 and August 28, as "[r]eview of the contempt finding necessarily requires review of the order[s] upon which it is based."  
Norskog v.  Pfiel
, 197 Ill. 2d 60, 69 (2001).

B.   Did Federal Law Require the Hospital to Submit a Report?   

For the following reasons, we hold that the HCQIA required the Hospital to report Dr.  Diaz's failure to renew her privileges and that the trial court lacked the authority to order the Hospital to violate federal law.  Therefore, the contempt judgment against the Hospital cannot stand.

Our review in this matter involves construing the HCQIA and resolving a preemption question, both of which are legal issues subject to 
de novo
 review.  See 
Advincula v. United Blood Services
, 176 Ill. 2d 1, 12 (1996) (
de novo
 review applies to the construction of a statute);
  
Schultz v.  Northeast Illinois Regional Commuter R.R. Corp.
, 201 Ill.  2d 260, 288 (2002) (preemption questions are legal issues subject to 
de novo
 review).  Because the HCQIA is a federal act, federal decisions interpreting it are binding on Illinois courts.  See 
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325, 335 (1996). 

First, we address the Hospital's contention that the HCQIA required it to submit the report to the NPDB.  Section 11133(a) of the HCQIA provides that "[e]ach health care entity which *** accepts the surrender of clinical privileges of a physician while the physician is under an investigation by the entity relating to possible incompetence or improper professional conduct *** shall report to the Board of Medical Examiners, in accordance with section 11134(a) of this title, the information described in paragraph (3)."  42 U.S.C.A. §11133(a)(1)(B)(1) (West 1995).

The National Practitioner Data Bank Guidebook (Guidebook) offers guidance as to what constitutes a surrender of privileges and when a physician is considered to be "under investigation."  The Guidebook is published by HHS and sets forth HHS's interpretation of its own regulations.  Consequently, to the extent the Guidebook applies to the facts of this case, it is entitled to substantial deference.  See 
Thomas Jefferson University v. Shalala
, 512 U.S. 504, 512, 129 L. Ed. 2d 405, 415, 114 S. Ct. 2381, 2386 (1994).

According to the Guidebook, a surrender of clinical privileges "would include a failure to renew clinical privileges while under investigation."  National Practitioner Data Bank Guidebook, at E-19 (September 2001).  Dr. Diaz does not dispute that her decision to allow her privileges to lapse constituted a surrender of those privileges for purposes of the HCQIA reporting requirements.  Hence, we conclude that she surrendered her privileges.  

The Hospital and HHS further contend that the investigation of Dr. Diaz was pending at the time she surrendered her privileges.  The Guidebook states that an investigation "is considered ongoing until the health care entity's decision making authority takes a final action or formally closes the investigation."  National Practitioner Data Bank Guidebook, at E-19 (September 2001).  The Hospital and HHS argue that, because the Board was prevented from taking the final action of implementing its decision to terminate Dr. Diaz's privileges, the investigation was ongoing.

Dr.  Diaz, on the other hand, contends that the investigation was not pending, because the Board had already made its final decision.  This contention is unpersuasive.  The Guidebook refers to a "final action," not a "final decision," as the endpoint of an investigation.  As we stated, the Guidebook is entitled to substantial deference.  
Thomas Jefferson University
, 512 U.S. at 512, 129 L. Ed. 2d at 415, 114 S. Ct. at 2386.  Dr. Diaz has not given any reason for us to depart from its definitions, and, therefore, we decline to adopt Dr. Diaz's interpretation.

Moreover, we fail to see how the Board's decision to terminate Dr. Diaz's privileges could be characterized as its "final action," when the court enjoined the Board from implementing its decision and restored Dr. Diaz's privileges with the Hospital.  Accordingly, we hold that Dr. Diaz surrendered her privileges while she was under investigation, thereby triggering the Hospital's obligation to file a report pursuant to section 11133(a) of the HCQIA.

C.     Preemption

Next, we determine whether the trial court's orders were preempted by federal law.  The supremacy clause of the United States Constitution states that the laws of the United States "shall be the supreme Law of the Land; *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const., art. VI, cl. 2.  Based on this clause, state law is " 'without effect' " where it conflicts with federal law.  
Busch
, 169 Ill. 2d at 334, quoting 
Maryland v. Louisiana
, 451 U.S. 725, 746, 68 L. Ed. 2d 576, 595, 101 S. Ct. 2114, 2128 (1981).  

The Supreme Court has instructed that " '[p]re-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' "  
Morales v. Trans World Airlines, Inc.
, 504 U.S. 374, 383, 119 L. Ed. 2d 157, 167, 112 S. Ct. 2031, 2036 (1992), quoting 
FMC Corp. v. Holliday
, 498 U.S. 52, 56-57, 112 L. Ed. 2d 356, 363, 111 S. Ct. 403, 407 (1990).  There is no contention in this case that the HCQIA expressly preempts Illinois law.  HHS argues, and we agree, that the HCQIA impliedly preempts the orders at issue.

Federal law impliedly preempts state law if (1) a state common-law claim directly conflicts with federal law, (2) it is impossible to comply with federal law without incurring liability under state common law, or (3) " 'state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (
Sprietsma v. Mercury Marine
, 537 U.S. 51, 65, 154 L. Ed. 2d 466, 479, 123 S. Ct. 518, 527 (2002), quoting 
Freightliner Corp. v. Myrick
, 514 U.S. 280, 287, 131 L. Ed. 2d 385, 392, 115 S. Ct. 1483, 1487 (1995)).  Our supreme court has recently noted that "it is not the province of this court--or of any state court--to interfere with the federal scheme, no matter how unfair it may appear to be."  
In re Marriage of Crook
, 211 Ill. 2d 437, 452 (2004).

In our view, the substantial monetary penalty the court imposed upon the Hospital as a result of its contempt finding qualifies as "liability under state common law."  "Liability" is defined, generally, as "[t]he quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment."  Black's Law Dictionary 925 (7th ed. 1999).  We further note that a contempt proceeding is an original, special proceeding collateral to and independent of the case in which the contempt arises.  
Computer Teaching Corp. v. Courseware Applications, Inc.
, 191 Ill. App. 3d 203, 206 (1989).  As we have explained, Dr. Diaz's decision not to renew her privileges triggered the Hospital's reporting obligation under the HCQIA.  Because it was impossible for the Hospital to comply with the HCQIA without being fined and held in contempt of court, the doctrine of implied preemption applies.

We also hold that the trial court's orders requiring the Hospital to submit a void report  would impede the accomplishment of Congress's objectives in enacting the HCQIA.  The HCQIA is intended to protect patients, not doctors.  See 
Brown v. Medical College of Ohio
, 79 F. Supp. 2d 840, 845 (N.D. Ohio 1999).  The NPDB is a source of  information for hospitals, licensing boards, and other health care entities.  Congress has determined that it is important for these entities to have access to data  regarding physicians' surrender of privileges while investigations are pending, in order to protect the health and safety of patients by preventing incompetent physicians from continuing to practice without any record of past problems.  Moreover, Congress has implemented a comprehensive regulatory scheme in order to effectuate these goals.  By requiring the Hospital to retract a report that it was required to make under the HCQIA, the trial court directly thwarts Congress's objectives in enacting the HCQIA.  Thus, the orders at issue are preempted by federal law. 

D.   Contempt

Generally, a court's order is conclusive, and the parties must obey it until it is modified or set aside.  
Jenner v. Wissore
, 164 Ill. App. 3d 259, 266 (1988).  A court may properly use its contempt powers to enforce its orders.  
Jenner
, 164 Ill. App. 3d at 266.  However, if the order upon which a judgment of contempt was based is void, then the contempt judgment cannot be sustained upon review.  
Jenner
, 164 Ill. App. 3d at 266.  An order or judgment is void if the court lacked personal or subject matter jurisdiction or otherwise lacked the power to decide the particular matter presented to it.  
Jenner
, 164 Ill. App. 3d at 266.  "Jurisdiction involves not only the power to hear and determine a given case but also the power to grant the particular relief requested, and every act of the court beyond its jurisdiction is void."  
Miller v. Balfour
, 303 Ill. App. 3d 209, 215 (1999).   

With respect to Dr.  Diaz's original complaint and motion for a TRO, there is no question that the trial court had personal jurisdiction over the parties and had subject matter jurisdiction over the issues presented.  However, with respect to Dr. Diaz's "Petition for Rule to Show Cause and for Award of Immediate Mandatory and Injunctive Relief," the trial court did not have the authority to grant the relief she requested, namely, requiring the Hospital to issue a void report to the NPDB.  Consequently, the court's orders of August 8 and August 28 are void for lack of subject matter jurisdiction, and the Hospital cannot be held in contempt for refusing to comply with those orders. 

III.   CONCLUSION

Accordingly, for the foregoing reasons, we vacate the judgment of the circuit court of Kane County finding the Hospital in contempt and imposing a monetary penalty.

Judgment vacated.

BYRNE and KAPALA, JJ., concur.