THOMPSON, Presiding Judge.
This is the second time that the Alabama State Board of Pharmacy ("the board") has filed a petition for a writ of mandamus in connection with stay orders issued by the Montgomery Circuit Court ("the circuit court") in this matter involving judicial review of the board's decision to suspend Demetrius Yvonne Parks's license to practice pharmacy and to place certain pharmacies that Parks owns on probation. In the previous mandamus proceeding, the board had asked this court to vacate an "order supplementing stay on a temporary basis" ("the first supplemental order"). Ex parte Alabama State Board of Pharmacy, 240 So.3d 594 (Ala. Civ. App. 2017). In that case, we set forth the following relevant procedural history:
"On October 1, 2016, after a hearing on 46 counts alleging various improper practices, the board entered an order *975 suspending Parks's license for 5 years and levying an administrative fine against her in the amount of $27,000. The board also placed the pharmacy permits of two of Parks's pharmacies-Parks Pharmacy # 2 and Parks Pharmacy # 4-on probation for five years. Those two pharmacies, as well as one other pharmacy Parks owned (hereinafter referred to collectively as 'the pharmacies'), were also ordered to pay administrative fines.
"On November 22, 2016, Parks and the pharmacies filed a complaint in the circuit court seeking judicial review of the board's decision. That same day, they also filed a motion to stay the board's decision pending the outcome of the judicial review. A hearing on the stay motion was scheduled for November 30, 2016. On November 28, 2016, two days before the scheduled hearing, Parks and the pharmacies filed an emergency motion to stay....
"....
"... On December 1, 2016, the circuit court entered an order staying the suspension of Parks's license subject to her compliance with specific enumerated terms, including that Parks 'shall not be involved in the dispensing of legend or controlled drugs.' Parks Pharmacy # 4 was also directed to hire a supervising pharmacist, who had to be approved by the board, and to make certain records available to the board upon its request.
"On December 14, 2016, two weeks after the stay order was entered, Parks and the pharmacies filed an 'emergency supplemental motion to stay' in which they sought the removal of language from a Web site of the National Practitioner Data Bank ('the NPDB') relating 'to the original suspension, now stayed.' ...
"The hearing on the December 14, 2016, motion was originally scheduled for December 27, 2016. On December 27, 2016, the circuit court entered an order resetting the hearing for January 5, 2017. On January 3, 2017, the circuit court entered another order granting the board's motion to continue the scheduled January 5, 2017, hearing. The order stated that the hearing 'will be reset.' ...
"Although the circuit court had continued the January 5, 2017, hearing, it also entered an order that day supplementing the stay 'on a temporary basis.' In the supplemental order, the circuit court stated that,
" 'because this matter had to [be] continued for various reasons, and deeming the relief requested to be in order, [the stay order] is hereby modified as follows ...
" '1. [Parks], whose suspension was lifted by this court's order of December 1, 2016, is hereby allowed to work as a pharmacist until further order of this court.
" '2. [The board] is hereby ORDERED to immediately clear and remove all language in its entirety sent to the [NPDB] concerning [the pharmacies] and [Parks] herself.' "[1]
Ex parte Alabama State Bd. of Pharmacy, 240 So.3d at 595-97 (footnote omitted).
In its first mandamus petition ("the first petition"), the board argued that § 41-22-20(c), Ala. Code 1975, part of the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala. Code 1975, required the circuit court to allow the board to present evidence in connection with Parks's request for a change in conditions related to the stay entered in the December 1, 2016, *976 order. This court agreed, and, citing § 41-22-20(c), concluded that the circuit court had erred in entering the first supplemental order, which essentially removed the conditions of the stay that had been included in the December 1, 2016, stay order, without first giving the board the opportunity to challenge the relief Parks sought in her supplemental motion for a stay. Among other things, this court concluded that the circuit court had erred in not allowing "the board to present evidence or arguments regarding the propriety of its decision to direct the board to delete language from the federal NPDB Web site." Ex parte Alabama State Bd. of Pharmacy, 240 So.3d at 599. We issued a writ of mandamus directing the circuit court to vacate the first supplemental order and "to hold a hearing so that the parties can present their evidence and arguments regarding the relief Parks has requested in her emergency supplemental motion for a stay." 240 So.3d at 599.
On August 8, 2017, the circuit court held the hearing as directed. On August 22, 2017, the circuit court entered an order again staying the suspension of Parks's license ("the second supplemental order") pending a final hearing of her petition for judicial review. However, in the second supplemental order, the conditions that had been imposed on Parks in the December 1, 2016, stay order were modified. In entering the second supplemental order, the circuit court determined, among other things, that Parks "shall be allowed to work during the duration of the stay as a supervising pharmacist" and that the board "shall submit a Void Report per the NPDB Guidebook, to remove all negative information on the NPDB website about Parks Pharmacies being on probation and about Ms. Parks ever being suspended." According to the NPDB Guidebook, a "void report" is "the withdrawal of a report in its entirety. NPDB Guidebook at E-8 (April 2015). Void reports are discussed in more depth later in this opinion. The second supplemental order also required the board to remove the same information from its own Web site. On September 12, 2017, the board filed its second petition for a writ of mandamus ("the second petition") in connection with this matter. In the second petition, the board asks this court to direct the circuit court to "rescind" the second supplemental order entered on August 22, 2017, and to order the parties to abide by the original stay order, to which their counsel had agreed, entered on December 1, 2016.
We first address Parks's contention in her motion to dismiss that the second petition is "exceedingly repetitious" of the first and is, therefore, due to be dismissed. Parks contends that the second petition "reflects a flagrant disregard of the p[r]erogatives and rights" of the circuit court and, she says, "amounts to an improper collateral attack" on the second supplemental order. In her motion and amended motion to dismiss, Parks cites no relevant authority to support those contentions.
As we wrote in Ex parte Alabama State Board of Pharmacy, 240 So.3d at 597, a petition for a writ of mandamus is the proper vehicle for seeking a review of an order staying the suspension of a professional license during the judicial review of the licensing agency's decision. See Ex parte Alabama Dep't of Mental Health, 207 So.3d 743, 753 (Ala. Civ. App. 2016) ; Ex parte Medical Licensure Comm'n of Alabama, 13 So.3d 397, 401 (Ala. Civ. App. 2008). In addressing the board's first petition, this court did not reach the substantive merits of the first supplemental order because we concluded that the board had not had an opportunity to challenge the grounds Parks had asserted in requesting additional relief. In other words, the first petition was decided solely on procedural grounds. See generally *977 Ex parte Alabama State Bd. of Pharmacy. The circuit court held a hearing as directed by this court in Ex parte Alabama State Board of Pharmacy and then entered the second supplemental order, which substantially modified the conditions that were placed on the stay entered on December 1, 2016.
The board now seeks a substantive review of the merits of that order. Specifically, the board challenges the provision in that order directing it to "void" the report made to the NPDB-an issue this court could not address in the first petition because no hearing had been held and no record developed as to that issue. Now, for the first time, the court can conduct a meaningful review of the issue presented in the second petition. Therefore, we conclude that there is nothing improper in the board's decision to seek review of the merits of the second supplemental order, and Parks's motions to dismiss are denied. We note that, after Parks filed the motion to dismiss in response to the second petition, this court called for her to answer the petition. Instead of providing this court with an answer responding to the issues presented in the second petition, Parks chose to file an amended motion to dismiss. Parks has not addressed the substantive issues raised in the board's petition.
Turning to the merits of the board's second petition, our standard is well settled.
" '[Our appellate courts have] consistently held that the writ of mandamus is an extraordinary and drastic writ and that a party seeking such a writ must meet certain criteria. We will issue the writ of mandamus only when (1) the petitioner has a clear legal right to the relief sought; (2) the respondent has an imperative duty to perform and has refused to do so; (3) the petitioner has no other adequate remedy; and (4) this Court's jurisdiction is properly invoked. Ex parte Mercury Fin. Corp., 715 So.2d 196, 198 (Ala. 1997). Because mandamus is an extraordinary remedy, the standard by which this Court reviews a petition for the writ of mandamus is to determine whether the trial court has clearly abused its discretion. See Ex parte Rudolph, 515 So.2d 704, 706 (Ala. 1987).'
" Ex parte Flint Constr. Co., 775 So.2d [805,] 808 [ (Ala. 2000) ]."
Ex parte Alabama Dep't of Human Res., 227 So.3d 519, 521 (Ala. Civ. App. 2017).
In support of the second petition, the board contends that the circuit court did not have the jurisdiction or the authority to order it to file a "void" report to the NPDB.[2] The board asserts that, under federal law and federal regulations, it is required to report the disciplinary action it took against Parks, i.e., that it suspended her license, and the pharmacies. Parks argued to the circuit court that pharmaceutical suppliers were refusing to do business with her based on the information the board had submitted to the NPDB; she presented no evidence such as letters or affidavits to support her contention, however. Therefore, she argued, the board should be required to have that information removed or voided from the NPDB until the judicial review of the suspension of her license was completed.
*978 In conjunction with the Social Security Act, Congress enacted the Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. 11101 et seq., part of which requires a state to
"have in effect a system of reporting the following information with respect to formal proceedings (as defined by the Secretary in regulations) concluded against a health care practitioner or entity by a State licensing or certification agency:
"(i) Any adverse action taken by such licensing authority as a result of the proceeding, including any revocation or suspension of a license (and the length of any such suspension), reprimand, censure, or probation."
42 U.S.C. § 1396r-2(a)(1)(A).
A "formal proceeding" is defined in the regulations promulgated pursuant to the HCQIA as "a proceeding held before a state licensing or certification authority, peer review organization, or private accreditation entity that maintains defined rules, policies, or procedures for such a proceeding." 45 C.F.R. § 60.3. There is no dispute that pharmacists and pharmacies are included within the definition of a "health care practitioner or entity" as to whom adverse actions such as suspensions of licences or probation must be reported. There also is no dispute that the board is required to report such adverse actions to the NPDB. The issue before us is whether the board is required to report to the NPDB its decision to suspend Parks's license and to place the pharmacies at issue on probation while a stay is in place pending judicial review of that decision.
Federal regulations mandate that the information required when an adverse action is taken against health-care practitioners and entities such as Parks and the pharmacies must be submitted to the NPDB within 30 days of the action to be reported. 45 C.F.R. § 60.5. The regulations further require that
"[a]n individual or entity which reports information on licensure or certification ... [or] civil or administrative judgments ... must also report any revision of the action originally reported. Revisions include, but are not limited to, reversal of a professional review action or reinstatement of a license. In the case of actions reported [when a licensing entity takes action after a formal proceeding,] revisions also include whether an action is on appeal."
45 C.F.R. § 60.6(b). Reporting of revisions is subject to the same time constraints as set forth in 45 C.F.R. § 60.5.
The regulations provide that the subject of the report to the NPDB will be provided with a copy of that report and may either accept it, provide a statement to the NPDB that will be permanently appended to the report, or follow the dispute process set forth in 45 C.F.R. § 60.21. There is no suggestion in the materials before us that Parks or the pharmacies availed themselves of the opportunity to respond to the information submitted to the NPDB as provided by 45 C.F.R. § 60.21.
This court's research has revealed no authority that would exempt the board from these mandatory reporting requirements. Nonetheless, the circuit court ordered the board to "void" its report to the NPDB. According to the NPDB Guidebook, upon which it appears the circuit court relied in ordering the board to "void" its report, a "void" report "is the withdrawal of a report in its entirety." NPDB Guidebook, at E-8 (April 2015). The guidebook states that the three reasons for voiding a report are:
"• The report was submitted in error
"• The action was not reportable because it did not meet NPDB reporting requirements *979 "• The action was overturned on appeal."
Id. The guidebook provides the following example of when a void report should be submitted.
"Example: A State medical board submits an Initial Report to the NPDB when it revokes a physician's license. Six months later, the revocation is overturned by a State court. The State medical board must void the Initial Report."
Id. The information contained in the guidebook suggests that a reporting entity, in this case the board, is still required to make an initial report of an adverse action even when the health-care practitioner or entity who is the subject of the report has appealed from that action. If the adverse action is overturned on appeal, then the reporting entity is required to make a second report notifying the NPDB of the outcome.
The board argues that the applicable federal law preempts the circuit court's attempt to order the removal of the language submitted to the NPDB providing notice of the suspension of Parks's license and of the pharmacies' probation. "A state-law action is preempted under the Supremacy Clause of the federal Constitution if the intent of Congress to preempt state law is clear and explicit in the statute. English v. General Elec. Co., 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)." Norfolk S. Ry. Co. v. Goldthwaite, 176 So.3d 1209, 1213 (Ala. 2015) (footnote omitted).
" 'The principles governing the circumstances under which preemption may arise ... may be summarized as follows: first, when acting within constitutional limits, Congress has expressly stated an intention to preempt there is preemption; second, though it has not expressly preempted a field or an identifiable portion thereof, preemption exists if Congress has adopted a "scheme of federal regulation ... sufficiently comprehensive to make reasonable the inference that Congress left no room ... for supplementary state regulation;" and finally, "where the field is one in which 'the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' " or "when 'compliance with both federal and state regulation is a physical impossibility,' " there will be preemption. [ Hillsborough County v. Automated Medical Laboratories, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985) ]. In applying these principles, though, it is important to bear in mind that "where the state's police power is involved, preemption will not be presumed." Chrysler Corp. v. Rhodes, 416 F.2d 319, 324, n. 8 (1st Cir. 1969).'
" Specialized Carriers & Rigging Ass'n v. Virginia, 795 F.2d 1152, 1155 (4th Cir. 1986)."
Dixon v. Hot Shot Express, Inc., 44 So.3d 1082, 1088-89 (Ala. 2010) (emphasis omitted).
In Ming Wei Liu v. Board of Trustees of University of Alabama, 330 F.App'x 775, 779 (11th Cir. 2009), the United States Court of Appeals for the Eleventh Circuit discussed Congressional intent in enacting the HCQIA, of which the reporting requirements of the NPDB are a part, writing:
"Congress enacted the HCQIA to address the rising problem of medical malpractice and the ability of incompetent [health-care practitioners] to move between states without having their prior practice records follow them and to create a presumptive immunity from monetary damages awarded against participants in the peer review process. 42 U.S.C. §§ 11101 - 11111."
*980 (Footnote omitted.) The underlying purposes of the HCQIA are to prevent malpractice, to improve the quality of health care, and to "restrict the ability of incompetent [health-care practitioners] to move from State to State without disclosure or discovery of the [health-care practitioner]'s previous damaging or incompetent performance" through effective professional peer reviews that are reportable to a national data bank. 42 U.S.C. § 11101(2). "To address the latter issue, Congress created the NPDB, a national repository of information with the primary purpose of facilitating a comprehensive review of physicians' and other health care practitioners' professional credentials. National Practitioner Data Bank Guidebook, at E-1 (September 2001)." Diaz v. Provena Hosps., 352 Ill.App.3d 1165, 1167, 288 Ill.Dec. 81, 84, 817 N.E.2d 206, 209 (2004) ; see also note 2, supra. Eligible entities may consult the NPDB to obtain information about a particular health-care practitioner; however, entities such as the suppliers to Parks and the pharmacies are not among those who have access to the NPDB.
In Diaz, supra, a state trial court held a hospital in contempt for its failure to retract a report it had made to the NPDB regarding a certain physician who had failed to renew her hospital privileges. Diaz, 352 Ill. App. at 1167, 288 Ill.Dec. at 83, 817 N.E.2d at 208. As in this case, the state trial court ordered the hospital to submit a "void" report to retract the previously filed report. The hospital did not comply with the state trial court's order, and the state trial court held the hospital in indirect contempt. The hospital appealed, arguing, among other things, that federal law required it to report the physician's failure to renew her privileges while a peer-review investigation was pending. It also filed a motion to stay the contempt order. Id.
The Appellate Court of Illinois considered the issue of whether the state trial court's orders were preempted by federal law.[3] 352 Ill. App. 3d at 1171-73, 288 Ill.Dec. at 87-88, 817 N.E.2d at 212-13. In finding that those orders were preempted, the Illinois court explained that
"the trial court's orders requiring the Hospital to submit a void report would impede the accomplishment of Congress's objectives in enacting the HCQIA. The HCQIA is intended to protect patients, not doctors. See Brown v. Medical College of Ohio, 79 F.Supp.2d 840, 845 (N.D. Ohio 1999). The NPDB is a source of information for hospitals, licensing boards, and other health care entities. Congress has determined that it is important for these entities to have access to data regarding physicians' surrender of privileges while investigations are pending, in order to protect the health and safety of patients by preventing incompetent physicians from continuing to practice without any record of past problems. Moreover, Congress has implemented a comprehensive regulatory scheme in order to effectuate these goals. By requiring the Hospital to retract a report that it was required to make under the HCQIA, the trial court directly thwarts Congress's objectives in enacting the HCQIA. Thus, the orders at issue are preempted by federal law."
352 Ill.App.3d at 1172-73, 288 Ill.Dec. at 88, 817 N.E.2d at 213 (emphasis added). Cf. Doe v. Community Med. Ctr., Inc., 353 Mont. 378, 388, 221 P.3d 651, 660 (2009) (declining to follow the preemption rationale in Diaz because the parties failed to present a specific legal argument urging *981 the Montana court to do so and because the court had not been presented with evidence "of an express declaration in the HCQIA of its intent to preempt state law").
In Brown v. Medical College of Ohio, 79 F.Supp.2d 840, 843 (N.D. Ohio 1999), which the Diaz court mentioned, a physician brought an action seeking an injunction prohibiting a hospital from reporting his resignation to the NPDB until the completion of the "professional review action process." The federal district court for the Northern District of Ohio stated that the regulations accompanying the HCQIA set out a comprehensive administrative scheme for challenging the accuracy of a report made to the NPDB. See 45 C.F.R. § 60.21. It added that
"[a]llowing a physician to bypass the administrative procedure simply by choosing to sue the reporting entity could 'induce frequent and deliberative flouting of administrative processes, thereby undermining the scheme of decisionmaking that Congress has created' under the HCQIA. See McGee v. United States, 402 U.S. 479, 484, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971)."
Brown v. Medical Coll. of Ohio, 79 F.Supp.2d at 845. Thus, Brown, too, recognizes that reporting adverse actions against health-care practitioners is part of a "comprehensive" legislative scheme that Congress passed with the goal of improving medical care, a component of which is to restrict incompetent health-care providers from being able "to move from state to state without disclosure or discovery of their previous incompetent performance." Diaz, 352 Ill. App. 3d at 1167, 288 Ill.Dec. at 84, 817 N.E.2d at 209.
In this case, the circuit court's order directing the board to "void" the report it submitted to the NPDB necessarily requires the board to violate its mandatory obligations under federal law to report the suspension of Parks's license and the placing of the pharmacies on probation within 30 days. Moreover, the circuit court's order impedes the accomplishment of Congress's objectives in enacting the HCQIA and the legislative scheme Congress developed to carry out those objectives. Therefore, we agree with the Illinois appellate court's rationale in Diaz that, in the face of such a conflict, federal law preempts the circuit court's order.
Within its argument regarding the circuit court's ability to require the board to submit a void report to the NPDB, the board contends that, pursuant to § 41-22-20(c), Ala. Code 1975, a "right" to a stay is conditioned on the circuit court's determination that "a stay would not constitute a danger to the public health, safety, or welfare." It is unclear from the second petition whether the board intended to make a separate argument, apart from its reporting-requirement argument, regarding the propriety of the granting of the stay of the suspension of Parks's license or the probation of the pharmacies.
Out of an abundance of caution, we will treat the board's assertion as a separate argument. The board states that "an agency can rebut the presumption of § 41-22-20(c) that a stay will not be detrimental to the public by establishing a stay would constitute danger to the public." It appears that the board's argument, if any, is that because five pharmacists "obviously determined that Ms. Parks was a danger by suspending her license," the stay was not warranted. However, in reviewing the transcript of the hearing, and recognizing that the board had agreed to the stay, albeit with certain conditions, that was entered in the December 1, 2016, stay order, we conclude that the board failed to overcome the presumption that a stay will not be detrimental. The board appears to rely on the findings of the board in deciding to suspend Parks's license, and it did not *982 present evidence to demonstrate how the public would be placed in danger if the stay were allowed to go forward.
Moreover, as part of its argument regarding the circuit court's lack of authority to order the board to submit a void report, the board conceded that "the only authority the circuit court possesses is to order the Board not to enforce the suspension of Ms. Parks from practicing pharmacy." To the extent that the board challenges the circuit court's stay of the suspension of Parks's license, based on the materials before us, we cannot say that the board has shown that the circuit court abused its discretion in entering the stay of the suspension of Parks's license or of the order placing the pharmacies on probation.
For the reasons set forth above, we hold that the circuit court exceeded its authority in directing the board to submit a "void" report to the NPDB or to otherwise have deleted the language it had already submitted reporting that Parks's license had been suspended and that the pharmacies had been placed on probation. Accordingly, the petition for a writ of mandamus is due to be granted. The circuit court is directed to vacate the second supplemental order and enter an order consistent with this opinion.
PETITION GRANTED; WRIT ISSUED.
Pittman, Thomas, and Donaldson, JJ., concur.
Moore, J., concurs in the result, without writing.

In this opinion, we use the same defined terms and designations we used in this excerpt from Ex parte Alabama State Board of Pharmacy.

According to the NPDB Guidebook, promulgated by the United States Department of Health and Human Services, a copy of which is included in the materials before us, the NPDB "is a confidential information clearinghouse created by Congress to improve health care quality, protect the public, and reduce health care fraud and abuse in the U.S." (Emphasis added.)

The United States Department of Health and Human Services, under whose auspices the NPDB is administered, filed a brief in support of the hospital as an amicus curiae in Diaz.