Order filed February 10, 2026.     2026 IL App (5th) 241354
Motion to publish granted
March 11, 2026.                          NO. 5-24-1354

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| KOTOMI DORMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 22-MR-254 |
| | ) | |
| THE MADISON COUNTY BOARD, | ) | |
| THE MADISON COUNTY SHERIFF, and | ) | |
| THE MADISON COUNTY STATE'S ATTORNEY, | ) | Honorable |
| | ) | Ronald S. Motil, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE CLARKE* delivered the judgment of the court, with opinion.
Justices Boie and McHaney concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, Kotomi Dorman, appeals from the circuit court's judgment dismissing her Freedom of Information Act (FOIA) complaint against defendants, the Madison County Board (Board), the Madison County Sheriff (Sheriff), and the Madison County State's Attorney (State). On appeal, the plaintiff argues we should reverse and remand for further proceedings because the circuit court erroneously dismissed her complaint. We agree.

_____

*Justice Moore was originally assigned to the panel. Justice Clarke was later substituted on the panel and has read the briefs.

1

¶ 2                                    I. BACKGROUND

¶ 3   On November 1, 2022, the plaintiff filed a four-count complaint. Count I alleged that on November 9, 2021, the plaintiff sent a FOIA request via email to the Board, which stated the following:

> "Under the provisions of the freedom of Information Act, I am requesting electronic/digital copies of the allegations, evidence, what is believed to be misconduct, notice, actions and conduct taken by Doug Hulme and Rob Dorman described in the termination resolution passed by the County Board, supporting the following factual portions of the resolutions.
>
> WHEREAS, the Board has been advised of and reviewed allegations and evidence regarding what it believes to be misconduct on the part of employee Rob Dorman;
>
> WHEREAS, this misconduct was a misuse of the powers entrusted upon Rob Dorman as IT Director for Madison County, causing the Board to lose confidence in his ability to continue to perform this job;
>
> WHEREAS, Rob Dorman was provided prior notice of, and an opportunity to attend, this hearing to review these allegations by this Board as required under the Madison County Personnel Policies for County Appointed Officials and Department Heads section X;
>
> WHEREAS, the actions undertaken by Rob Dorman were outside the bounds of ethical conduct and standards that are expected for someone in his position of leadership;
>
> WHEREAS, it is believed his conduct is violative of the public trust.
>
> Specifically I am requesting digital copies
>
> 1. The prior notice provided to Doug Hulme and Rob Dorman

2. The allegations

3. The evidence

4. What the misuse of powers were

5. The name of the allegations advisor and list of the advised in attendance, and time and location of the review"

The plaintiff alleged the Board failed to respond to her request following a five-day extension. Count II, which was specifically pled against the State, and count III, which was specifically pled against the Sheriff, were the same as count I. In each count, the plaintiff alleged the defendant's failure to comply was willful and intentional.

¶ 4    Count IV alleged that on January 13, 2022, the plaintiff sent a FOIA request via email to the State, which allegedly requested "electronic copies of any and all emails attachments and or documents sent and or received by Shannon Goforth and or Jennifer Vucich/Mudge with any and or all of the following words: Township, Democrat, Precinct, Committeemen, Label ***." On January 14, 2022, the plaintiff amended the January 13, 2022, FOIA request via email by adding the words "Sample Ballot." The plaintiff alleged the State failed to respond to her request.

¶ 5    As relief, the plaintiff requested the circuit court order the defendants "to conduct a reasonable search and produce any and all responsive records, plus costs, attorney fees, and a $5,000 civil penalty."

¶ 6    In March of 2023, the Sheriff filed its answer and affirmative defenses to the plaintiff's complaint. In its answer, the Sheriff denied the allegations contained in count III by stating that the allegations were legal conclusions. The Sheriff asserted the affirmative defenses that section 7(b) and 7(c) of the FOIA prohibited disclosure. 5 ILCS 140/7(b), (c) (West 2022). The Sheriff

did not assert an unduly burdensome exemption under section 3(g) as an affirmative defense. *Id.* § 3(g).

¶ 7    In April of 2023, the Board and State filed their joint answer and affirmative defenses. In their joint answer related to count I, the Board admitted that the plaintiff made a FOIA request on November 9, 2021, and that it responded on November 17, 2021, requesting a five-day extension. Further, it answered "that, through the State's Attorney's Office, the Board responded to Plaintiff's request on November 29, 2021, and produced all documents responsive to Request 1. After diligent search, the State's Attorney's Office had no documents responsive to Request 4 through 5, and the request was closed." Regarding count II, the State admitted and answered the same. In its answer to count IV, the State admitted that the plaintiff made a FOIA request on January 13, 2022, that was later amended with additional language on January 14, 2022. The State further admitted that it responded on January 21, 2022, requesting a five-day extension. Additionally, it admitted that "no records were produced in response to [p]laintiff's [r]equest prior to [p]laintiff's filing of this lawsuit." The Board and State did not assert an unduly burdensome exemption under section 3(g) as an affirmative defense. Attached to the Board and State's joint answer and affirmative defenses was an email, which contained the Board and State's November 29, 2021, response as it related to counts I and II.

¶ 8    On July 14, 2023, the Board and State filed a joint "motion for relief pursuant to 5 ILCS § 140/11(f)." In the motion, the Board and State alleged the plaintiff's January 13, 2022, FOIA request resulted in 2,500 emails, with 1,476 identified as potentially responsive records, consisting of over 69,000 pages that contained confidential personal information. The Board and State indicated in their motion an obligation to review the requested records, noting that 120 hours had been spent reviewing, redacting, and compiling these records. Due to the significant volume of

pages, the Board and State requested that the circuit court allow them to raise an exemption under section 3(g) of the FOIA and find the request to be unduly burdensome. Neither the motion for relief, nor the record on appeal, contains evidence from the State that it provided the plaintiff an opportunity to confer with it in an attempt to reduce the request to manageable proportions before requesting to invoke the section 3(g) exemption. In the alternative, the Board and State requested the circuit court to conduct an *in camera* review of the documents, assess the claimed statutory exemptions, and enter an order that the proposed production of documents complies with the FOIA. Attached to the motion was an affidavit, which indicated the 69,000 pages of responsive records contained confidential personal information, and a "general log of records," which identified the records by category and bates number. Each record category listed in the general log included a general description of the information and the nature of the claimed exemption.

¶ 9    On August 28, 2023, a hearing was held on the motion for relief[1] and an order was entered on September 14, 2023. In the circuit court's order, it found "that at this stage of the litigation and at this time, the Defendants shall not be permitted to raise an exemption under 5 ILCS 140/3(g)." Additionally, it noted that an *in camera* review of the 69,000 pages "would be an inefficient burden on the [c]ourt's time." Consequently, the circuit court appointed attorney Adam Bragee as special master to review the 69,000 pages and determine which pages, or parts thereof, qualify for exemptions under the FOIA. The order specified that Bragee was to be "privately compensated by the Plaintiff for services rendered at the maximum hourly rate of $300.00 per hour with the amount of $3000.00 to be paid *** as retainer prior to the start of services." Upon completion of the review, Bragee was to submit a report to the circuit "court and the parties containing his findings as to the

---

[1]The record on appeal does not include a transcript of the August 28, 2023, hearing.

possible exemptions and also the records which will be released pursuant to the Freedom of Information Act."

¶ 10    On November 13, 2023, the case was called for a status hearing. A transcript of the hearing is not included in the record on appeal. However, on December 27, 2023, the circuit court issued an order indicating that the plaintiff had not complied with the September 14, 2023, order, and "re-set" for hearing the defendants' joint motion for relief on January 26, 2024. After several continuances, the circuit court held a hearing on the joint motion on November 25, 2024. At the commencement of the hearing, it was noted that Christopher Baucom represented the Board and State, Julie Chambers represented the Sheriff, and the plaintiff was present and represented by Thomas Maag.

¶ 11    Baucom argued, *inter alia*, that the plaintiff did not comply with the September 14, 2023, order, noting that the circuit court appointed Bragee to conduct an *in camera* review to "resolve the issue." Baucom claimed that because the plaintiff did not comply with the September 14, 2023, order, she implicitly acknowledged that her request, which resulted in 69,000 pages of records, was excessively burdensome and subject to dismissal under the FOIA. Further, he argued that the plaintiff could have narrowed the request but has "chosen not to now that we've been at this for a year." Maag responded by arguing that there is no provision of the FOIA that obligates a requester to pay an attorney to conduct an *in camera* review "to the benefit of the other side." Further, he responded by stating the fact that the plaintiff's request yielded 69,000 records did not mean the records were exempt from being produced under the FOIA. In addition, Maag stated that the FOIA does not require the plaintiff "to hire an attorney for the defendants," suggesting that it would be more appropriate for the circuit court to order the defendants to produce and submit to the circuit court a representative sample of what they claim is privileged. Maag emphasized that the

6

defendants did not respond to the plaintiff's request, and "by not even responding has waived any objection to being unduly burdensome." Nonetheless, Maag maintained that if the defendants wished to object to the plaintiff's request as unduly burdensome, "it is up to [the defendants] to pay" Bragee's retainer fee.

¶ 12 After hearing oral arguments from both parties, the circuit court determined that the plaintiff's FOIA request was unduly burdensome. In ruling, the circuit court noted that the plaintiff did not comply with the September 14, 2023, order, which the court stated was intended to conserve judicial resources. The circuit court then stated:

"I don't think that taking a representative grouping of pages would alleviate the problem or alleviate the burden to the Court or to the defendant, and I don't think it would be solved with appointing—I disagree. I don't think that using a non-attorney as an assistant to an attorney to do a review really is not a proper use of that type of position. I think the reason why I appointed a special master as an attorney is that it does involve points of law, and I think the parties would be more comfortable with an attorney giving this review of the 69,000 pages that had been requested. So that coupled with the fact that there has been ignoring of the Court's order—we're now past a year and some odd months when nothing is done I think does speak to the burden of the request, and on that basis I'm going to grant the defendant's motion for relief pursuant to those sections of the statute that I had stated, and we'll allow a dismissal of the case."

¶ 13 On November 25, 2024, the circuit court entered a written order stating, "Defendants' Motions for Relief are called and heard. For the reasons stated on the record, the motions are Granted. Judgment entered in favor of Defendants." The plaintiff timely appealed. Additional facts will be set forth in our analysis below when necessary.

¶ 14                                    II. ANALYSIS

¶ 15    As an initial matter, the Sheriff asks that we strike the *pro se* plaintiff's brief on appeal for failure to comply with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) because the statement of facts contains unsupported allegations, lacks citations to the record, and includes a series of argumentative statements.

¶ 16    We agree that Rule 341(h)(6) requires a brief statement of facts to be "stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). However, whether to dismiss this appeal due to violations of Rule 341(h)(6) is a matter within our discretion. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. As the plaintiff's violations do not hinder our review, we will not strike the statement of facts. *McMackin v. Weberpal Roofing, Inc.*, 2011 IL App (2d) 100461, ¶ 3. However, we admonish the plaintiff to carefully adhere to the requirements of the supreme court rules in future appeals.

¶ 17    On appeal, the plaintiff raises several arguments. We begin by addressing whether the circuit court abused its discretion in its September 14, 2023, order appointing a special master and requiring the plaintiff to pay the services of the appointed special master for an *in camera* review. The parties agree that the applicable standard of review is abuse of discretion. See *Geraci v. Amidon*, 2013 IL App (2d) 120023-U[2] (applying an abuse of discretion standard in evaluating the trial court's denial of the plaintiff's motion to appoint a special master).

---

[2]Nonprecedential Rule 23 orders issued on or after January 1, 2021, may be cited for persuasive purposes. Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021).

¶ 18    The plaintiff argues that the circuit court erred by appointing a special master to conduct a review of FOIA records and by ordering that "the fee of the [s]pecial [m]aster shall be borne by the [p]laintiff," the FOIA requester. We agree.

¶ 19    The Freedom of Information Act (FOIA or Act) (5 ILCS 140/1 *et seq.* (West 2022)) is a comprehensive statutory scheme that defines both the obligations of public bodies and the authority of the courts in FOIA enforcement actions. Section 11 of the Act expressly provides the procedures available to a circuit court when reviewing a public body's denial of records, including the authority to conduct an *in camera* examination of the records at issue. *Id.* § 11(f). FOIA places the burden of justifying nondisclosure squarely on the public body and contemplates that the court itself will resolve disputes concerning exemptions and disclosure. Nothing in the Act authorizes a circuit court to delegate that statutory responsibility to a third party or to condition judicial review on a requester's payment of additional costs.

¶ 20    FOIA is to be construed liberally in favor of disclosure, and its exemptions are to be construed narrowly. *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 407 (1997). To further that remedial purpose, the legislature expressly authorized courts to award attorney fees and costs to prevailing requesters and to impose civil penalties on public bodies for willful or intentional violations. 5 ILCS 140/11(i), (j) (West 2022). Notably absent from the statute is any provision permitting a court to assess costs against a requester as a prerequisite to review or as a means of facilitating compliance.

¶ 21    The circuit court's appointment of a special master finds no support in FOIA. In federal court, such appointments are governed by Federal Rule of Civil Procedure 53, which strictly limits their use, generally requires party consent absent exceptional circumstances, and mandates careful judicial consideration of both the scope of the master's authority and the allocation of costs. Fed.

9

R. Civ. P. 53(a), (g). The federal rule expressly requires courts to allocate payment among the parties after considering the fairness of the allocation and the nature of the dispute. Fed. R. Civ. P. 53(g)(3). FOIA contains no comparable authorization, no consent-based framework, and no cost-allocation mechanism permitting review expenses to be shifted to a requester.

¶ 22    Illinois has likewise adopted no procedural rule analogous to Federal Rule 53 authorizing circuit courts to appoint special masters, defining their permissible duties, or regulating compensation. In fact, just the opposite has occurred. In 1962, an amendment to article VI of our state constitution, which became effective January 1, 1964, abolished the offices of fee officers and masters in chancery as part of our judicial system. *Carey v. Elrod*, 49 Ill. 2d 464, 469 (1971); see also *Hurst v. Papierz*, 16 Ill. App. 3d 574, 589 (1973) (noting that the trial court should not allow a master or other fee officer to conduct an accounting as to the amount the plaintiff was wrongfully denied of an interest in a joint venture but should itself conduct the accounting). In *Jenner v. Wissore*, 164 Ill. App. 3d 259 (1988), the Appellate Court, Fifth District described a proceeding in which the trial court appointed an attorney to serve as a special master to review expenditures and report findings to the court, notwithstanding that "the office of master in chancery has been abolished." *Id.* at 265 (citing *Factor v. Factor*, 27 Ill. App. 3d 594, 597 (1975)). The court's discussion underscores that, absent statutory authorization, the appointment of such an officer lacks grounding in Illinois law. Additionally, section 14 of article VI of the Illinois Constitution now provides that "[t]here shall be no fee officers in the judicial system." Ill. Const. 1970, art. VI, § 14.

¶ 23    The circuit court's inherent authority to manage its docket likewise does not justify the appointment of a special master. While circuit courts possess inherent power to control their proceedings, including the authority to dismiss actions for want of prosecution (see *Sander v. Dow*

10

*Chemical Co.*, 166 Ill. 2d 48, 65-66 (1995)), that authority is not unlimited and may not be exercised in a manner that conflicts with, or expands beyond, a legislatively prescribed statutory scheme. FOIA expressly authorizes *in camera* review by the circuit court and assigns responsibility for nondisclosure to the public body. 5 ILCS 140/11(f) (West 2022). Substituting a special master for the court's own review alters the statutory design and shifts the burden of compliance away from the public body.

¶ 24    The error was compounded when the circuit court required the plaintiff alone to bear the cost of the special master. FOIA does not authorize a court to impose compliance or review-related costs on a requester. To the contrary, the Act expressly permits recovery of fees and costs by requesters who prevail against noncompliant public bodies. *Id.* § 11(i). Imposing review costs on a requester undermines FOIA's purpose by creating a financial barrier to the public's statutory right of access to government records.

¶ 25    Here, the circuit court appointed a special master to perform a function FOIA assigns to the court itself and conditioned the continuation of the plaintiff's FOIA action on her payment for that appointment. "Courts have no power to delegate judicial functions unless clearly authorized by law." *People v. Love*, 83 Ill. App. 3d 948, 951 (1980). Because FOIA does not permit delegation of *in camera* review, does not authorize appointment of a special master, and does not allow costs to be imposed on a requester, the September 14, 2023, order exceeded the circuit court's authority and is hereby vacated. The plaintiff's subsequent noncompliance with that unauthorized order, therefore, could not properly serve as the basis for dismissal of her complaint. Where, as here, the circuit court expressly relied on the plaintiff's noncompliance with that order in dismissing all counts of the plaintiff's FOIA action, the dismissal cannot stand.

¶ 26   Accordingly, we reverse the judgment of dismissal and remand for further proceedings consistent with this opinion. On remand, the circuit court shall reinstate the plaintiff's FOIA action and proceed under section 11 of FOIA, including conducting any *in camera* review it deems necessary, without appointing a special master or requiring the plaintiff to bear costs not authorized by statute. Additionally, the public bodies may raise any applicable statutory exemptions under FOIA, including section 3(g), which may be asserted during FOIA litigation. *Kelly v. Village of Kenilworth*, 2019 IL App (1st) 170780, ¶ 49. However, before a public body may rely on the unduly burdensome exemption set forth in section 3(g), FOIA requires that the public body first confer with the requester and afford an opportunity to narrow the request in an effort to reduce the burden. 5 ILCS 140/3(g) (West 2022). Because the record does not affirmatively demonstrate that such an effort occurred here, the circuit court shall ensure compliance with the statutory prerequisites set forth in section 3(g) before considering any relief on that basis.

¶ 27                                    III. CONCLUSION

¶ 28   Based on the foregoing, we find the circuit court erred in dismissing the plaintiff's complaint. We consequently reverse the circuit court's order granting dismissal in the defendants' favor and remand for further proceedings consistent with the guidance contained herein, which includes the opportunity for the defendants to raise an exemption upon complying with section 3(g) of the FOIA, in addition to the plaintiff's pursuit of appropriate remedies. As a result of our disposition of this case, we need not address the other arguments on appeal.

¶ 29   Reversed and remanded with directions.

*Dorman v. The Madison Co. Bd., etc.*, 2026 IL App (5th) 241354

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Madison County, No. 22-MR-254; the Hon. Ronald S. Motil, Judge, presiding. |
| **Attorneys for** *Pros se* **Appellant:** | Kotomi M. Dorman, of Maryville, for appellant (*pro se*). |
| **Attorneys for Appellee:** | Paul L. Brusati and Hannah Hope, of Armstrong Teasdale LLP, of St. Louis, MO, for Madison Co. Bd. and Madison Co. State's Attorney, Heidi L. Eckert, of Blitz, Bardgett & Deutsch, LC, of St. Louis, MO, for Madison Co. Sheriff. |